**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*Pro Hac Vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL SCHWARZ, on behalf of his minor child B.S., EMILY DUNBAR, on behalf of her minor child H.D., and MICHAEL GRIDLEY and ELIZABETH GRIDLEY, on behalf of their minor children A.G. and Z.G., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case. No. 3:25-cv-03125-RS<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Date:      October 16, 2025<br>Time:      1:30 p.m.<br>Location: Courtroom 3, 17th Floor<br>Judge:   Hon. Richard Seeborg |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 16, 2025, at 1:30 p.m., or as soon as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 3, 17th Floor, Defendant Google LLC ("Google"), by and through its counsel of record, will and hereby does move the Court for an order dismissing Plaintiffs' Class Action Complaint (Dkt. No. 1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the Request for Judicial Notice, the Declaration of Sunita Bali and the exhibits attached thereto, the pleadings and papers on file in this action and any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

## STATEMENT OF ISSUES

1.     Whether Plaintiffs' Complaint fails to include a "short and plain statement of [its] claim[s] showing that the pleader is entitled to relief" as required by Rule 8(a)(2).

2.     Whether Plaintiffs' state law claims are preempted by the Children's Online Privacy Protection Act.

3.     Whether Plaintiffs' federal law claims are defeated by consent.

4.      Whether, to the extent any of Plaintiffs' claims sound in fraud, Plaintiffs have failed to allege facts with the specificity required under Rule 9(b).

5.     Whether each of Plaintiffs' nine claims independently fail because Plaintiffs have not plausibly alleged facts sufficient to satisfy the legal elements of those claims.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.   Google's Educational Services ................................................................ 2

    B.   Applicable Terms and Policies................................................................. 3

    C.   The Regulatory Landscape....................................................................... 4

    D.   Other Lawsuits Brought by Plaintiffs' Attorneys ................................... 4

    E.   Plaintiffs' Allegations .............................................................................. 5

III.  LEGAL STANDARD .......................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

    A.   The Complaint does not include a "short and plain statement" showing entitlement to relief as required by Rule 8. ............................................ 6

    B.   COPPA preemption defeats Plaintiffs' state law claims........................ 7

    C.   Consent defeats Plaintiffs' federal law claims. ...................................... 8

    D.   To the extent Plaintiffs' claims sound in fraud, they fail because the Complaint lacks the specificity required under Rule 9(b). .................... 9

    E.   Plaintiffs' claims each fail for independent reasons. ............................ 11

        1.   Counts I & II fail because Plaintiffs cannot show a Constitutional violation by Google..................................................................... 11

            a)   Google is not a state actor. .......................................... 11

            b)   Plaintiffs have not shown a Constitutional violation. ................... 12

        2.   Counts III & IV fail due to unsatisfied FWA and CIPA elements............ 13

            a)   Plaintiffs fail to specify what information they claim qualifies as communication contents. ......................................................... 14

            b)   Plaintiffs fail to plausibly allege that their communications were intercepted "in transit." ........................................................ 15

            c)   Plaintiffs fail to plausibly allege any third-party involvement, as required to state a claim under CIPA § 631(a). ........................ 16

GOOGLE'S NOM AND MOTION TO DISMISS
Case No. 3:25-cv-03125-RS

          d)      Plaintiffs fail to allege any "confidential" communications, as required to state a claim under CIPA § 632. .................................. 16

    3.    Count V does not sufficiently plead fraud under the CDAFA, conduct "without permission," or "damage or loss." ................................................. 17

    4.    Count VI fails for lack of UCL standing and on the merits. ..................... 18

    5.    Counts VII & VIII fail because Plaintiffs' common law privacy claims lack factual support. ........................................................................ 20

    6.    Count IX fails because unjust enrichment is not a standalone claim and Plaintiffs are not entitled to restitution on a quasi-contract claim ....... 22

V.      CONCLUSION ............................................................................................................ 23

CASES

*Arroyo v. Chattem, Inc.*,
    926 F. Supp. 2d 1070 (N.D. Cal. 2012) ................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 6

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................ 22

*Avist v. Cnty. of Napa*,
    No. C 00-1525 VRW, 2000 WL 1268244 (N.D. Cal. Aug. 31, 2000) .................. 13

*Browning v. Am. Honda Motor Co., Inc.*,
    549 F. Supp. 3d 996 (N.D. Cal. 2021) .................................................................. 11

*Cabezas v. Craigslist, Inc.*,
    No. 21-CV-06513-RS (PR), 2023 WL 2484268 (N.D. Cal. Feb. 10, 2023) .......... 21

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) ........................................................................... 11, 12

*Cherkin v. Powerschool Holdings, Inc.*,
    No. 24-cv-02706-JD (N.D. Cal., filed May 6, 2024) ............................... 4, 5, 11, 18

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................ 17

*Cody v. Ring LLC*,
    718 F. Supp. 3d 993 (N.D. Cal. 2024) .................................................................. 16

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................. 18

*Cousart v. OpenAI LP*,
    No. 23-CV-04557-VC, 2024 WL 3282522 (N.D. Cal. May 24, 2024) ................... 6

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................................... 9

*Doe v. Apple Inc.*,
    No. 24-CV-05107-NW, 2025 WL 1266928 (N.D. Cal. May 1, 2025) ................... 22

*Doe v. Bonta*,
    101 F.4th 633 (9th Cir. 2024) ............................................................................... 13

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................................................. 18

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ............................................................................ 19

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ........................................................................... 10

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ........................................................................... 22

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ...................................................................................... 16

*GMC Semitech Co. v. Cap. Asset Exchange and Trading, LLC*,
   No. 24-cv-09451-NC, 2025 WL 1236677 (N.D. Cal. Apr. 29, 2025) ................. 19

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................................. 14

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................ 14

*Gutierrez v. Converse Inc.*,
   No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ................. 17

*H.K. through Farwell v. Google LLC*,
   595 F. Supp. 3d 702 (C.D. Ill. 2022) ................................................................... 7

*Hamilton v. Bank of Blue Valley*,
   746 F. Supp. 2d 1160 (E.D. Cal. 2010) ............................................................... 19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................. 22

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985) .............................................................................. 7

*Heeger v. Facebook, Inc.*,
   No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ................. 20

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023) ......................................................... 15, 18

*Hell's Angels Motorcycle Corp. v. Cnty. of Monterey*,
   89 F. Supp. 2d 1144 (N.D. Cal. 2000) ................................................................ 13

*Hernandez-Silva v. Instructure, Inc.*,
   2:25-cv-02711-SB-MAA (C.D. Cal., filed Mar. 27, 2025) ................................. 4, 5

*Hill v. Nat'l Coll. Athletic Assoc.*,
   7 Cal. 4th 1 (1994) ........................................................................................ 21

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................. 20

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)................................................................................ 20

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................................... 17, 18

*In re Google Inc.*,
   No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)............................ 17

*In re Google, Inc. Priv. Pol'y Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .......................................................... 21

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................. 13

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016).................................................................................. 22

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014).............................................................................. 14

*Jensen v. Lane Cty.*,
   222 F.3d 570 (9th Cir. 2000)................................................................................ 12

*Jones v. Google LLC*,
   73 F.4th 636 (9th Cir. 2023) ......................................................................... 7, 15

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................... 9

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025) ........................................................................... 10

*Kirtley v. Rainey*,
   326 F.3d 1088 (9th Cir. 2003).............................................................................. 11

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002)............................................................................... 15

GOOGLE'S NOM AND MOTION TO DISMISS
Case No. 3:25-cv-03125-RS

*M.K. by & through Kirksey v. Google LLC,*
  No. 21-CV-08465-VKD, 2023 WL 2671381 (N.D. Cal. Mar. 27, 2023)............................ 18

*Markels v. AARP,*
  689 F. Supp. 3d 722 (N.D. Cal. 2023) ................................................................. 23

*Marolda v. Symantec Corp.,*
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................. 10

*McClendon v. City of Stockton,*
  No. CIV.S-03-0482 WBS GG, 2004 WL 2095706 (E.D. Cal. July 28, 2004) ........................ 9

*Mollett v. Netflix, Inc.,*
  795 F.3d 1062 (9th Cir. 2015)............................................................................ 5

*New Mexico ex rel. Balderas v. Google, LLC,*
  489 F. Supp. 3d 1254 (D.N.M. 2020) ................................................................... 8

*NovelPoster v. Javitch Canfield Grp.,*
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................. 15

*Nowak v. Xapo, Inc.,*
  No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........................... 17

*O'Handley v. Weber,*
  62 F.4th 1145 (9th Cir. 2023) .......................................................................... 12

*Parks Sch. of Bus., Inc. v. Symington,*
  51 F.3d 1480 (9th Cir. 1995)............................................................................ 12

*Pratt v. Higgins,*
  No. 22-cv-04228-HSG, 2023 WL 4564551 (N.D. Cal. July 17, 2023) ............................. 18

*Pryor v. City of Clearlake,*
  877 F. Supp. 2d 929 (N.D. Cal. 2012) ................................................................. 9

*Reisberg v. Seesaw Learning, Inc.,*
  No. 30-2025-01481220-CU-PO-CXC (Orange Cnty. Cal. Super. Ct., filed May
  8, 2025) ................................................................................................. 4, 5

*Russell v. Walmart, Inc.,*
  680 F. Supp. 3d 1130 (N.D. Cal. July 5, 2023)....................................................... 22

*San Miguel v. HP Inc.,*
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................................... 19

*Santoro v. Tower Health,*
  No. CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .................................. 15, 21

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................. 18

*Shanahan v. IXL Learning, Inc.*,
    No. 3:24-cv-02724-RFL (N.D. Cal., filed May 7, 2024) ................................... 4, 5

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) .............................................................. 19

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ...................................................................................... 20

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 18

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................. 6

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ............................................................................. 11

*Tavernetti v. Super. Ct.*,
    22 Cal. 3d 187 (1978) ........................................................................................ 14

*Tilley v. Ampro Mortg.*,
    No. CIV. S-11-1134 KJM CKD, 2011 WL 5921415 (E.D. Cal. Nov. 28, 2011) .................. 22

*Torres v. Prudential Fin., Inc.*,
    No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .............................. 16

*Turner v. Porsche Cars N. Am., Inc.*,
    No. CV 23-06465-MWF, 2023 WL 8788754 (C.D. Cal. Dec. 19, 2023) ............................. 18

*United States v. Heckenkamp*,
    482 F.3d 1142 (9th Cir. 2007) ........................................................................... 13

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) .............................................................. 15

*Vance v. Google LLC*,
    No. 20-CV-04696-BLF, 2024 WL 5011611 (N.D. Cal. Dec. 5, 2024) ................................ 19

*Vernonia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995) ............................................................................................. 9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................... 10

GOOGLE'S NOM AND MOTION TO DISMISS
Case No. 3:25-cv-03125-RS

*Williams v. What If Holdings, LLC*,
 No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)..............................14

*Woods v. Google Inc.*,
 No. 05:11-CV-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ...............................10

STATUTES

15 U.S.C. § 6501 ..............................................................................................................passim

15 U.S.C. § 6502 ...............................................................................................................4, 7, 8

16 C.F.R. § 312.2 ...........................................................................................................................8

18 U.S.C. § 2510 ...........................................................................................................................5

18 U.S.C. § 2511 ...........................................................................................................................9

20 U.S.C. § 1232 ...........................................................................................................................4

34 C.F.R. § 99.31 ...........................................................................................................................4

34 C.F.R. § 99 ...............................................................................................................4, 12, 21

42 U.S.C. § 1983 ...........................................................................................................5, 11, 12

Cal. Bus. & Prof. Code § 17200 ...............................................................................................5

Cal. Educ. Code § 49073.1 ...............................................................................................4, 12

Cal. Educ. Code § 49076 ...........................................................................................................21

Cal. Pen. Code § 502 ...............................................................................................................5, 17

Children's Online Privacy Act, 15 U.S.C. § 6501, *et seq.* ......................................................4

CIPA § 631...................................................................................................................passim

CIPA § 632...................................................................................................................passim

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ...............................................................................................................1, 6, 7

Fed. R. Civ. P. 9 ...............................................................................................................passim

Fed. R. Civ. P. 12(b)(6)..........................................................................................................5

# I. INTRODUCTION

K-12 schools across the United States use Google's web-based educational tools, including Google Workspace for Education ("GWFE"), to enhance collaboration, improve communication, and streamline classroom management. The minor Plaintiffs in this case allege that their public schools required them to use GWFE and Google's Chrome browser on school-issued Chromebooks, and that Google somehow violated their privacy as a result. But Plaintiffs do not allege any facts explaining how their privacy was violated, or how Google violated any of the various laws alleged in the Complaint.

What Plaintiffs provide, instead, is a 77-page thinkpiece about why "EdTech" and "surveillance capitalism" are harmful to children. Indeed, this is Plaintiffs' counsel's latest in a series of lawsuits targeting educational technology providers, and the Complaint is largely devoid of any allegations specific to Plaintiffs' use of products and services offered by Google, or any coherent explanation of how such use provides the basis for claims against Google. It is simply not clear what Plaintiffs think Google has done wrong. Thus, as a threshold matter, the Complaint should be dismissed outright because it does not contain a short and plain statement showing entitlement to relief as required by Rule 8.

As best as Google can tell, Plaintiffs are suing on the theory that Google collected students' personal information without "effective consent" because Google relies on consent obtained from schools, rather than consent obtained directly from parents. Compl. ¶¶ 2, 11, 98 125. If that is correct, then the cornerstone to Plaintiffs' theory—that parents must provide consent directly to Google—conflicts with the Children's Online Privacy Protection Act ("COPPA"), as made clear by Federal Trade Commission ("FTC") guidance that providers like Google may rely on schools to obtain consent. This approach ensures that neither providers like Google nor schools face undue burden in providing and deploying educational technologies. Thus, COPPA preempts Plaintiffs' state law claims since there is no dispute that Google obtains consent from schools. Consent bars their federal claims as well because school consent vitiates any reasonable expectation of privacy required for Plaintiffs to assert constitutional privacy

violations, and because the consent that Google would have received from any non-Google

websites or web properties using Google's services bars Plaintiffs' claim under the Federal

Wiretap Act.

      Moreover, to the extent Plaintiffs' claims sound in fraud, Plaintiffs fail to meet the

heightened pleading requirements of Rule 9(b) because they have not identified any

misstatements or omissions by Google.

      Finally, each of Plaintiffs' nine claims fail for independent reasons: Google is not a state

actor and has not violated Plaintiffs' constitutional rights (Counts I & II); Plaintiffs have not

alleged any facts suggesting that Google "intercepted" the "contents" of their "communications"

"in transit" (Counts III & IV); they have not met the statutory requirements to show violation of

California's Comprehensive Computer Data Access and Fraud Act or Unfair Competition Law

(Counts V & VI); they have not plausibly alleged that they had a reasonable expectation of

privacy over any specific information or that Google acted in a highly offensive manner (Counts

VII & VIII); and Google has not been unjustly enriched at their expense (Count IX).

      Plaintiffs clearly hold strong beliefs about the use of modern technologies in the

classroom. But those beliefs are not enough to sustain a lawsuit against Google. Plaintiffs must

articulate a valid legal theory and include sufficient factual detail to state a claim, which they

have not done. Google respectively asks the Court to dismiss the Complaint.

## II.     BACKGROUND

### A.    Google's Educational Services

      A Google Workspace for Education account is a type of Google Account created and

managed by a school for use by students and educators. Schools provide GWFE accountholders

with access to a suite of "core" services that improve collaboration, productivity, and classroom

management ("Core Services"). For example, students can use GWFE to send emails through

Gmail, collaborate on documents in real time in Google Docs, or participate in online classes

through Google Meet. Compl. ¶ 51. Teachers can schedule classes with Google Calendar,

"organize assignments, discussions, and materials" with Google Classroom, or grade student work through Google Assignments. *Id.*

Nearly 70 percent of K-12 schools in the United States use GWFE. Compl. ¶ 48. Some schools use the "Fundamentals" edition, which Google offers to accredited schools for free, while other schools pay for enhanced editions. *Id.* ¶¶ 49, 174. In both scenarios, GWFE is free to students. Many schools also provide students with Chromebooks, which are laptops that run Google's Chrome operating system ("Chrome OS"), and which can be used to access GWFE and other web-based educational tools. *Id.* ¶ 44.

Although outside GWFE, many of Google's free services are supported through advertising revenue, *see* Compl. ¶ 39, GWFE is different. "There are no ads shown in [GWFE] [C]ore [S]ervices," and "none of the personal information collected in the [C]ore [S]ervices is used for advertising purposes." *See* Declaration of Sunita Bali in Support of Google's Motion to Dismiss ("Bali Decl."), Ex.1, GWFE Privacy Notice, https://workspace.google.com/terms/education_privacy/ (last accessed July 14, 2025).

**B.     Applicable Terms and Policies**

Use of Core Services is generally subject to the GWFE Privacy Notice (Bali Decl., Ex. 1), the GWFE Terms of Service (Bali Decl., Ex. 2), and the Cloud Data Processing Addendum (Bali Decl., Ex. 3) (collectively, "Core Services Policies"), as well as any terms and policies incorporated therein. *See, e.g.*, Bali Decl. Ex. 4, *Service categories available to [GWFE] Users*, https://support.google.com/a/answer/6356441 (last accessed July 14, 2025).

Because schools license GWFE from Google and are responsible for creating and managing the accounts used by students and teachers, the Core Services Policies are generally agreed to between Google and schools (i.e., the "Customers"), although they are publicly available to all. *See* Bali Decl., Exs. 1 & 2.

**C. The Regulatory Landscape**

This lawsuit involves services that Google provides to public schools, and therefore

implicates both the Children's Online Privacy Act, 15 U.S.C. § 6501, *et seq.* ("COPPA") and the

Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 CFR part 99 ("FERPA").

Pursuant to COPPA, Google is required to make a "reasonable effort" to "obtain verifiable

parental consent for the collection, use, or disclosure of personal information from children"

under 13 years of age. 15 U.S.C. § 6502(b)(1). Recognizing the disruption that would result from

requiring consent directly from parents, the FTC has advised that businesses like Google may

meet this obligation by relying on a school's authorization to collect personal information from

children. *See* Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions

("COPPA FAQ"), N.1, (July 2020), https://www.ftc.gov/business-guidance/resources/complying-

coppa-frequently-asked-questions#Schools (last visited July 14, 2025); *see also infra* § IV.B.

There is no dispute that this is precisely what Google does. *See, e.g.*, Compl. ¶¶ 11, 98.

Pursuant to FERPA, schools may share student "education records" with Google without

parental consent when Google acts as a "school official." 34 C.F.R. § 99.31; *see also* Bali Decl.,

Ex. 2 (explaining that to the extent Google receives FERPA Records, "Google will be considered

a 'School Official' . . . and will comply with FERPA"). Like FERPA, state laws like California

Education Code § 49073.1(a)(1) authorize schools to hire companies like Google to assist with

"digital storage, management, and retrieval of" student records.

**D. Other Lawsuits Brought by Plaintiffs' Attorneys**

The EdTech Law Center has filed at least four other lawsuits against various providers of

educational technology.[1] Each lawsuit argues that the entire EdTech industry exposes students to

"intrusive and exploitative data practices" through a "surveillance-capitalist business model."

*Cherkin* Compl. ¶ 29; *Hernandez-Silva* Compl. ¶ 31; *Shanahan* Compl. ¶ 21; *Seesaw* Compl.

---

[1] *See Cherkin v. Powerschool Holdings, Inc*., No. 24-cv-02706-JD (N.D. Cal., filed May 6, 2024)
("*Cherkin*"); *Hernandez-Silva v. Instructure, Inc.*, 2:25-cv-02711-SB-MAA (C.D. Cal., filed Mar.
27, 2025) ("*Hernandez-Silva*"); *Shanahan v. IXL Learning, Inc.*, No. 3:24-cv-02724-RFL (N.D.
Cal., filed May 7, 2024) ("*Shanahan*"); *Reisberg v. Seesaw Learning, Inc*., No. 30-2025-
01481220-CU-PO-CXC, (Orange Cnty. Cal. Super. Ct., filed May 8, 2025) ("*Reisberg*").

¶ 28. The only substantive decision in these cases to date is in *Cherkin*, where Judge Donato partially granted PowerSchool's motion to dismiss. 2025 WL 844378, at *2. A motion to dismiss is pending in *Hernandez-Silva*, and denial of a motion to compel arbitration is pending interlocutory appeal in *Shanahan*. The defendant has not responded to the *Reisberg* complaint.

### E.    Plaintiffs' Allegations

Plaintiffs B.S., H.D., A.G., and Z.G. (the "Minor Plaintiffs") are students at public schools in Oregon, Maryland, and California. Compl. ¶¶ 20, 22, 24, 25. They were each "required to access and use the [GWFE] suite of applications and the Chrome browser, which [they each] accessed and used from [their] school-issued device, a Google Chromebook." *Id*. The Complaint does not specify which GWFE services Plaintiffs actually used, or what (if any) of their data was actually collected, used, or disclosed by Google. And although they rely on Google's terms and privacy policies to describe the sorts of information that Google *might* collect, *see, e.g.*, *id.* ¶ 56, Plaintiffs do not allege that Google collected any of that information from them.

Plaintiffs allege that Google violated the following laws: (1) 42 U.S.C. § 1983 - Fourth Amendment, (2) 42 U.S.C. § 1983 - Fourteenth Amendment, (3) the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, (4) the California Invasion of Privacy Act ("CIPA") Cal. Penal Code §§ 631, 632, (5) the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code §§ 502, *et seq.*, (6) California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.*, and bring common law claims for (7) Invasion of Privacy—Public Disclosure of Private Facts, (8) Intrusion Upon Seclusion, and (9) Unjust Enrichment. Compl. ¶¶ 346-467.

Plaintiffs seek to represent a nationwide class, and a California subclass, of "[a]ll persons . . . who attend or attended a K-12 public school who used Google's Products, defined herein as the Chromebook, Chrome OS, Chrome browser, and Workspace for Education, as part of their schooling." *Id.* ¶¶ 48, 332, 333.

### III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate where "there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Mollett v.*

-5-

*Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," which "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A complaint should be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. ARGUMENT

Several overarching problems infect Plaintiffs' claims and demand dismissal. To start, the Complaint does not contain a short and plain statement showing entitlement to relief as required by Rule 8. Moreover, Plaintiffs' state law claims are preempted by COPPA in that they seek to compel Google to obtain consent directly from parents where COPPA allows Google to obtain consent from schools instead, which Plaintiffs concede Google did here. Consent also defeats Plaintiffs' federal claims on the merits. To the extent that Plaintiffs' claims sound in fraud, they fail because Plaintiffs do not plead fraud with the specificity required by Rule 9(b). Moreover, each of Plaintiffs' claims independently fail for the reasons discussed below.

These deficiencies demand dismissal of the Complaint.

### A. The Complaint does not include a "short and plain statement" showing entitlement to relief as required by Rule 8.

Despite spanning more than 75 pages, Plaintiffs' Complaint does not include "a short and plain statement of [its] claim[s] showing that the pleader is entitled to relief" as required by Rule 8(a)(2). At the highest level, the Complaint lacks virtually any detail about Plaintiffs' *personal* experience with Google's products, or any clear articulation of what Plaintiffs contend Google did wrong with respect to them or anyone else. Instead, Plaintiffs seek to drag Google into a lawsuit based on "rhetoric and policy grievances that are not suitable for resolution by federal courts." *Cousart v. OpenAI LP*, No. 23-CV-04557-VC, 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024) (dismissing a case under Rule 8 where complaint focused on societal concerns about

artificial intelligence technology); *see, e.g.*, Compl. ¶¶ 29-38, 251, 252, 264-267 (using rhetoric such as "surveillance capitalism" and raising societal concerns with education technologies). Plaintiffs must clearly articulate their legal claims, and their failure to do so is, alone, grounds for dismissal. *See, e.g.*, *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding dismissal based on violation of Rule 8 where complaint "exceeded 70 pages in length, [and was] confusing and conclusory").

### B.    COPPA preemption defeats Plaintiffs' state law claims.

Plaintiffs' state law claims (Counts IV - IX) are preempted by COPPA, which provides that "[n]o State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action . . . that is inconsistent with the treatment of those activities or actions under [COPPA]." 15 U.S.C. § 6502(d). This language prevents "contradictory state law requirements, or . . . requirements that stand as obstacles to federal objectives," *Jones v. Google LLC*, 73 F.4th 636, 642 (9th Cir. 2023), and by its terms applies if (1) the conduct at issue is regulated by COPPA, and (2) state law imposes liability that is different from how COPPA treats the conduct. 15 U.S.C. § 6502(d). Both conditions are met here.

*First,* the challenged conduct is subject to COPPA. Although Plaintiffs do not specify their ages, it is reasonable to infer that they are each under 13 given that their claims are expressly tied to purported collection of data from children in violation of COPPA. *See, e.g.*, Compl. ¶¶ 437, 439; *see also H.K. through Farwell v. Google LLC*, 595 F. Supp. 3d 702, 711 (C.D. Ill. 2022) ("Plaintiffs' [briefing] makes clear that Plaintiffs are asserting Defendant's conduct falls squarely in COPPA's orbit.").

*Second*, Plaintiffs' state law claims hinge on their assertion that Google must obtain consent *directly* from parents. *See, e.g.*, Compl. ¶¶ 129-131 (arguing that COPPA requires consent directly from parents); *see also id.* ¶¶ 404 (CIPA claims based on lack of "consent"), 414 (CDAFA claim based on lack of "permission"), 424 (UCL claim based on "unauthorized disclosure and collection"), 442 (invasion of privacy claim based on lack of "consent"), 446

(intrusion upon seclusion claim based on allegation that Google was "not authorized"), 457 (unjust enrichment claim based on lack of "valid consent"). Plaintiffs' claims thus squarely conflict with COPPA, as made clear by the FTC's guidance, which confirms that, "yes," "an educational institution [can] consent to a website or app's collection, use or disclosure of personal information from students." COPPA FAQ N.1.

More specifically, COPPA requires that operators of websites or online services directed to children "obtain verifiable parental consent for the collection, use, or disclosure of personal information from children" under 13 years of age. 15 U.S.C. § 6502(b)(1); 16 C.F.R. § 312.2. "Verifiable parental consent" is defined as "**any reasonable effort** (taking into consideration available technology), including a request for authorization for future collection, use, and disclosure described in the notice, to ensure that a parent of a child receives notice . . . and authorizes the collection, use, and disclosure, as applicable, of personal information." 15 U.S.C. § 6501(9) (emphasis added). Interpreting this standard, the FTC has affirmed that operators may rely on schools to obtain or provide consent. *See* COPPA FAQ N.1; *see also New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1261 (D.N.M. 2020) ("FTC guidance is persuasive in recognizing a proper notice and consent role for schools given that schools communicate with and obtain consent from parents and guardians they regularly contact for any number of other school-based activities.").

Plaintiffs' state law claims must be dismissed as preempted by COPPA because they seek to hold Google liable for failing to obtain consent directly from parents, when there is no dispute that Google obtained consent from schools as permitted by COPPA. *See, e.g.*, Compl. ¶ 98; *see also Balderas*, 489 F. Supp. 3d at 1262 (dismissing action by state attorney general based on school's role in COPPA's notice-and-consent regime).

### C.   Consent defeats Plaintiffs' federal law claims.

Consent also defeats each of Plaintiffs' federal law claims on the merits. Specifically, the consent that Google obtains from schools eliminates Counts I and II because it vitiates any reasonable expectation of privacy required for asserting constitutional privacy violations. *See,*

*e.g.*, *Pryor v. City of Clearlake*, 877 F. Supp. 2d 929, 944 (N.D. Cal. 2012) (rejecting Fourth Amendment claim where there were "sufficient grounds to believe that [a third-party] had common authority to consent"); *McClendon v. City of Stockton*, No. CIV.S-03-0482 WBS GG, 2004 WL 2095706, at *10 (E.D. Cal. July 28, 2004) (similarly rejecting Fourth and Fourteenth Amendment claims based on "apparent authority to grant consent"); *see also Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995) (recognizing, even outside COPPA, that "schools stand *in loco parentis* over the children entrusted to them").

Consent also defeats Count III. An interception is not unlawful under the FWA where one of the parties to the communication consented to such interception. *See* 18 U.S.C. § 2511(2)(d). Plaintiffs base their FWA claim solely on their (unsupported) assertion that Google intercepted (unspecified) communications that Plaintiffs made to *non*-Google websites or web properties. Compl. ¶¶ 392, 396. But the operators of any such websites or web properties would have necessarily consented to Google's collection of information in connection with their use of Google's services. *See* Bali Decl., Ex. 1 (explaining Google collects "activity on third-party sites and apps that use our services[]"); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (dismissing FWA claim due to consent where "[t]he alleged interception . . . only occurs because the health care providers choose to install Google source code on their web properties"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (similar).

**D.    To the extent Plaintiffs' claims sound in fraud, they fail because the Complaint lacks the specificity required under Rule 9(b).**

Several of Plaintiffs' claims—including their UCL, CDAFA, and common law privacy and unjust enrichment claims—appear to sound in fraud. *See, e.g.*, Compl. ¶ 428 (citing "false and misleading representations and omissions"); *id.* ¶¶ 442, 449 (alleging information was taken "through deceit"); *id.* ¶ 457 (citing "intentionally deceptive practices"). Plaintiffs also, at times, seem to assert that consent from schools is not "effective" due to misleading representations by Google. *See, e.g., id.* ¶ 228. The heightened pleading standards of Rule 9(b) thus apply and require Plaintiffs to plead with particularity both (1) the circumstances constituting fraud and

(2) Plaintiffs' reliance on any alleged misrepresentations. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1000-02 (N.D. Cal. 2009). Plaintiffs fail to meet those standards.

Plaintiffs' Complaint includes an entire section entitled: "Google makes false and misleading statements about its data practices and its commitment to privacy on which it intends the public, schools, and parents to rely." Compl. ¶¶ 201-229. But that section contains only bare assertions, legal conclusions, and normative opinions. It does not include any facts establishing the "who, what, when, where, and how" of Google's alleged fraud or Plaintiffs' reliance on Google's alleged misleading statements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Key v. Qualcomm Inc.,* 129 F.4th 1129, 1141 (9th Cir. 2025) (dismissing fraud-based claims where plaintiff did not "demonstrate actual reliance"); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012) (same where plaintiff failed to allege "when, where, or how she was exposed to or accessed this [alleged misrepresentation]").

Elsewhere, Plaintiffs assert that Google's public disclosures "contain[] vague, incomplete, or conflicting language regarding Google's data practices." Compl. ¶ 101. But Plaintiffs provide no concrete examples, and thus fail to allege the "specific content" of any alleged misrepresentations. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (dismissing claims sounding in fraud where the complaint did not identify the "specific content" of the allegedly misleading statements in legal notices); *Woods v. Google Inc.*, No. 05:11-CV-1263-JF, 2011 WL 3501403, at *8 (N.D. Cal. Aug. 10, 2011) (dismissing claims sounding in fraud where plaintiff failed to explain how statements were "likely to deceive (or confuse) members of the public"). Similarly, Plaintiffs fail to identify any undisclosed practices that conflict with Google's disclosures or rise to the level of material omissions. For example, even if Google's policies do not use the term "browser fingerprinting," Compl. ¶¶ 60-61, they still disclose the collection of the data that the Complaint identifies as being at issue, *compare* Bali Decl., Ex. 1 (disclosing collection of "info about your settings and the apps, browsers, and devices . . . [including] browser and device type, settings configuration, unique identifiers, operating system, mobile network information, and application version number"), *with* Compl.

¶ 59 (alleging collection of "browser type, version, and extensions" "operating-system attributes" and "hardware attributes"). So, there is no material omission, much less a conflict with Google's public statements. *See e.g.*, *Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, 1012 (N.D. Cal. 2021) (dismissing for failure to "specifically allege[] the content [and context] of the omission").

Separately, Plaintiffs fail to allege any facts suggesting they relied on any supposedly misleading statements by Google. Indeed, as in *Cherkin*, "the complaint does not allege, nor is it reasonable to infer from its allegations, that plaintiffs actually read [Google's] privacy representations," much less that plaintiffs relied on those representations." 2025 WL 844378, at *5. Thus, Rule 9(b) demands dismissal of Plaintiffs' claims to the extent they sound in fraud.

### E. Plaintiffs' claims each fail for independent reasons.

#### 1. Counts I & II fail because Plaintiffs cannot show a Constitutional violation by Google.

##### a) Google is not a state actor.

Plaintiffs asserting claims under Section 1983 must demonstrate that a governmental action violated their constitutional rights. Google is a private entity, and so Plaintiffs must overcome the "presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Plaintiffs cannot do so here, so Counts I and II should be dismissed with prejudice.

***Public Function Test.*** Plaintiffs first invoke the public function test, asserting that "Google has been authorized by governmental entities to perform a function that is traditionally a public function performed by the government, namely, collecting and storing education records." Compl. ¶¶ 351, 367. But collecting and storing education records is not a function that is "traditionally and exclusively governmental." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003); *see also, e.g.*, *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010) ("[E]ducational services [are] not a function that is traditionally and exclusively the prerogative of the state"). To the contrary, California law expressly gives public educational agencies discretion to outsource recordkeeping to third parties to "provide services, including

cloud-based services, for the digital storage, management, and retrieval of pupil records." Cal. Educ. Code § 49073.1; *see also Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995) (public function test unmet where statute directed that "*either* the state or a private institution . . . may guarantee students loans").

***Joint Action Test.*** Plaintiffs also assert that "Google is jointly engaged with state officials in the prohibited action," Compl. ¶¶ 352, 368, mimicking the "joint action" test, which requires that the state be "so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jensen v. Lane Cty.*, 222 F.3d 570, 575 (9th Cir. 2000). Plaintiffs do not even attempt to meet this standard. Rather, Plaintiffs allege that Google— not their schools—is in control, and even contend that Google has deceived the schools. *See, e.g.*, Compl. ¶ 138; *id.* ¶¶ 201, 228. Thus, under Plaintiffs' own theory, the government was *not* "significantly involve[d]" in Google's "actions and decisionmaking," nor was there any "meeting of the minds" between Google and Plaintiffs' schools, as required to show a "conspiracy." *O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023).

***FERPA.*** Plaintiffs also suggest that Google is a state actor because its policies disclose that it is considered a "school official" to the extent it receives student records subject to FERPA. Compl. ¶¶ 350, 366; Bali Decl., Ex. 2. But "a private entity may be designated a state actor for some purposes but still function as a private actor in other respects." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 814 (9th Cir. 2010). Even if Google is a school official for FERPA purposes, that "would not resolve the question [of] whether the state 'was sufficiently involved in causing the harm to plaintiff[s]' such that this Court should treat [Google] as acting under color of state law." *Id*. The Court must apply the relevant tests to assess Section 1983 claims—i.e., the unmet public function and joint action tests. *See id.* at 814–15.

### b) Plaintiffs have not shown a Constitutional violation.

Even if Plaintiffs could show that Google qualifies as a state actor (they cannot), they have not alleged violations of the Fourth or Fourteenth Amendment.

To start, the Fourth Amendment only protects against (government) searches and seizures that intrude upon a reasonable expectation of privacy. "An individual has a reasonable expectation of privacy if he can demonstrate a subjective expectation that his activities would be private, and he [can] show that his expectation was one that society is prepared to recognize as reasonable." *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) (cleaned up). Plaintiffs cannot reasonably expect that their activities on Google-operated online services would be private from Google, given that such services must necessarily share data with Google to function and given Google's disclosures about its data practices. *See infra* § IV.E.4. Nor have they identified any *specific* instances where Google violates its disclosures. *See supra* § IV.D.

As to the Fourteenth Amendment, Plaintiffs appear to invoke a "right to informational privacy [from the government] stemming from an individual's interest in avoiding disclosure of personal matters," but this right only applies to "highly sensitive personal information," such as information regarding sexual activity, substance abuse treatment, or reports of abuse. *Doe v. Bonta*, 101 F.4th 633, 638 (9th Cir. 2024) (cleaned up). Plaintiffs have not alleged *any* facts suggesting that their "highly sensitive personal information" is implicated here. They do not even specify which GWFE services they used or provide *any* examples of the information that they contend Google collected about them through their use of GWFE or Google Chrome. Nor have Plaintiffs alleged any "facts supporting any inference that [public] disclosure occurred." *Hell's Angels Motorcycle Corp. v. Cnty. of Monterey*, 89 F. Supp. 2d 1144, 1148–49 (N.D. Cal. 2000); *Avist v. Cnty. of Napa*, No. C 00-1525 VRW, 2000 WL 1268244, at *2 (N.D. Cal. Aug. 31, 2000) (dismissing Fourteenth Amendment claim where plaintiff failed to plead "facts evidencing an actual disclosure of personal information"); *see also infra* § IV.E.4.

### 2. Counts III & IV fail due to unsatisfied FWA and CIPA elements.

To plead a federal wiretapping claim, Plaintiffs must plausibly allege that Google "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794-95 (N.D. Cal. 2022). Similarly, to plead a claim under CIPA Section 631(a), Plaintiffs must plausibly allege that

Google "[1] willfully [2] attempt[ed] to learn the contents or meaning of a communication [3] in transit [4] over a wire." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978). CIPA Section 632(a) requires that a person "intentionally and without the consent of all parties . . . uses an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication[.]" Plaintiffs have not satisfied these elements.

### a) Plaintiffs fail to specify what information they claim qualifies as communication contents.

Plaintiffs' Complaint vaguely refers to "user communications" and "internet communications," but they do not explain what those terms mean. Compl. ¶¶ 390, 391, 406.

If Plaintiffs are suggesting that *anything* sent to or received from a website qualifies as the "contents" of "communications," they are wrong. Courts regularly distinguish between non-content "record" information—e.g., names, addresses, and subscriber identification numbers, and communication "contents"—i.e., the "intended message conveyed by [a] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833-34 (N.D. Cal. 2021) (construing as record information IP addresses; location information; browser type; operating system information; origin, length, and time of call). Alternatively, if Plaintiffs agree that only certain information qualifies as content, they fail to allege facts sufficient to show that content is implicated here. Plaintiffs' reference to "detailed URLs," Compl. ¶ 392, proves the point: The Ninth Circuit recognized in *Zynga* that URLs are usually non-content record information, but that "under certain circumstances" they "might" reveal the contents of communications, such as when they include user-entered search terms. 750 F.3d at 1106. Here, Plaintiffs do not actually allege that they entered any "search queries" at all, Compl. ¶ 392, much less that the content of such queries was unlawfully intercepted by Google. *See, e.g.*, *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (website owner could not be liable for eavesdropping because website owner "was the intended recipient of plaintiff's communication"). Similarly, Plaintiffs do not explain what they mean by "website browsing histories," Compl. ¶ 392, but if they mean URLs viewed, that also typically is not content. *See Zynga*, 750 F.3d at 1106; *Gonzales v. Uber Techs.*,

*Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (dismissing CIPA claim because "opening a webpage" is "not a communication with content").

In short, the complaint is so vague that Plaintiffs fail to plausibly allege that the content of communications is even implicated. "[S]pecifics are essential to convert a case like this from a law-school hypothetical to an actionable dispute." *Santoro v. Tower Health*, No. CV 22-4580, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024). Counts III and IV can and should be dismissed on this basis alone. *See id.* (dismissing FWA claim); *Jones*, 720 F. Supp. 3d at 947 (dismissing CIPA claim where plaintiffs did not provide detail about their use of chat feature).

> **b)      Plaintiffs fail to plausibly allege that their communications were intercepted "in transit."**

For a communication to be "intercepted," it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The "in transit" requirement renders the FWA and CIPA "undoubtedly limited" in the context of online communications due to the "speed" with which these communications occur and the "narrow window" in which they might be intercepted. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (citations omitted); *see Konop*, 302 F.3d at 878 n.6 (recognizing same). Accordingly, courts routinely dismiss claims where plaintiffs fail to allege *facts* showing that communications have been captured in real time. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (finding insufficient bare assertion that code allowed a third party to "secretly intercept in real time").

Here, Plaintiffs recite that the alleged interception occurred "contemporaneously with [their] sending and receipt of . . . communications." Compl. ¶ 391. But "[m]erely parroting the statutory requirement that it occurred in transit is insufficient." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023). Instead, Plaintiffs must allege facts explaining when and how interception occurs. *Id.* They have not done that, and indeed some of their allegations are wholly inconsistent with real-time interception. For example, Plaintiffs' use of the term "browsing *histories*" implies collection after transmission. Compl. ¶ 392.

        **c)**      **Plaintiffs fail to plausibly allege any third-party involvement, as required to state a claim under CIPA § 631(a).**

Plaintiffs assert that "Google aided and abetted numerous third parties in unlawfully intercepting protected communications." Compl. ¶ 409. If this language is meant to signal a claim under CIPA § 631(a), which imposes liability on someone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" an unlawful interception, it is woefully inadequate.

Plaintiffs allege that Google provides third parties with "access" to its API for "data sharing" purposes. Compl. ¶¶ 190-197. But Plaintiffs do not allege that any third parties accessed *their* data. For example, they do not allege that their schools used third-party apps offered by "Kahoot!, Pear Deck, IXL, ReadWorks, [and] Nearpod." Compl. ¶ 193. And even if they had, their schools necessarily would have authorized these third-party apps by integrating them with GWFE. *See, e.g.*, Bali Decl., Ex. 1 ("We share personal information with . . . other trusted third party providers"); *id.*, Ex. 2 ("If Customer intends to enable . . . access or use . . . , [optional additional products and third-party offerings] Customer will[] . . . obtain parental consent for the collection and use of personal information . . . "); *id.*, Ex. 5 ("District admins must enable access to add-ons in order for educators to use these features.").

In any event, "access or even analy[sis]" of data after transmission does not equate to "read[ing]" or "learn[ing] the contents" of "communication[s]" while "in transit." *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). This, too, defeats Plaintiffs' CIPA Section 631(a) claim because they "fail[] to establish an underlying third-party violation." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024).

        **d)**      **Plaintiffs fail to allege any "confidential" communications, as required to state a claim under CIPA § 632.**

CIPA Section 632 only applies to "confidential communications," and Plaintiffs have not alleged facts to show that they had a "reasonable expectation that [their] conversation [was] not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). "Internet-based communications are not 'confidential' within the meaning of section 632, because such

communications can easily be shared by, for instance, the recipient(s) of the communications." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018) (collecting cases). Indeed, "[u]nlike phone conversations, email [and other internet-based] services are by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013). For this reason, courts regularly dismiss Section 632 claims based on purportedly "confidential" internet "communications." The Court should do the same here.

### 3. Count V does not sufficiently plead fraud under the CDAFA, conduct "without permission," or "damage or loss."

Plaintiffs' CDAFA claim fails as a matter of law on several grounds.

First, if Plaintiffs' Comprehensive Computer Data Access *and Fraud* Act claim "sounds in fraud," the claim must be dismissed because Plaintiffs fail to plead fraud with particularity as required by Rule 9(b). *See Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing "because Plaintiff's CDAFA claim sounds in fraud [and] is subject to Rule 9(b) pleading standards") (cleaned up); *see also supra* § IV.D.

Second, Plaintiffs fail to plead facts establishing that Google acted "without permission." Under the CDAFA, "without permission" is a term of art, meaning to "access[] or use[] a computer, computer network, or website in a manner that overcomes technical or code-based barriers." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011). Plaintiffs have not alleged that Google overcame any technical or code-based barriers with respect to GWFE, Google Chrome, Chromebooks, or Chrome OS, demanding dismissal. *See, e.g., id.* (dismissing claims against Facebook because "there were clearly no technical barriers blocking [Facebook] from accessing its own website"); *Gutierrez v. Converse Inc.,* No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (dismissing claims against Converse because it "controlled [its] Website").

Third, Plaintiffs have not alleged facts demonstrating that they have suffered any cognizable "damage or loss by reason of a [CDAFA] violation." Cal. Pen. Code § 502(e)(1). If

-17-

Plaintiffs mean to invoke a privacy loss, the majority view is that "alleged privacy invasions do not qualify [as loss] under the statute." *Heiting*, 709 F. Supp. 3d at 1020-21; *see also, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (rejecting loss-of-privacy theory); *Pratt v. Higgins*, No. 22-cv-04228-HSG, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (same). Finally, Plaintiffs "do not plead that they 'ever attempted or intended to participate in the market for the information'" or "derived economic value from that information." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081-83 (N.D. Cal. 2023) (rejecting theory that protected information was diminished in value).

Plaintiffs' CDAFA claim fails on numerous legal grounds and should be dismissed.

### 4. Count VI fails for lack of UCL standing and on the merits.

Plaintiffs' UCL claim fails because Plaintiffs lack statutory standing, and fail to allege facts sufficient to state a claim under the "unlawful," "unfair," or "fraudulent" prongs.

As a threshold matter, Plaintiffs fail to show that they lost "money or property" as a result of Google's conduct and thus lack standing under the UCL. Courts regularly dismiss UCL claims for lack of standing on the grounds that personal information does not constitute property. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 714 ("[P]ersonal information does not constitute property for purposes of a UCL claim"); *M.K. by & through Kirksey v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 2671381, at *5 (N.D. Cal. Mar. 27, 2023) (same). Indeed, similar UCL claims brought by the same Plaintiffs' counsel were dismissed on this very ground. *See Cherkin*, 2025 WL 844378, at *5.

Separately, the UCL only provides equitable relief, which defeats Plaintiffs' claim here because Plaintiffs fail to show that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020). The complaint never once mentions inadequate remedies. *See Turner v. Porsche Cars N. Am., Inc.*, No. CV 23-06465-MWF, 2023 WL 8788754, at *6 (C.D. Cal. Dec. 19, 2023) (requiring "a simple allegation that legal remedies are inadequate in order to state an equitable claim for relief"). That omission is especially

-18-

problematic here because Plaintiffs seek statutory damages for their FWA and CIPA claims, which begs the question *why* they think they can recover more under a restitution theory. *See, e.g.*, *Vance v. Google LLC*, No. 20-CV-04696-BLF, 2024 WL 5011611, at *7 (N.D. Cal. Dec. 5, 2024) (dismissing equitable claim given Plaintiffs' request for statutory damages); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021) (dismissing UCL equitable claim).

Turning to the merits of the claim, for all the reasons explained in this brief, Plaintiffs' UCL "unlawful" claim fails because they have not demonstrated a "predicate violation of law." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1179-80 (E.D. Cal. 2010). Plaintiffs also have not pleaded fraud with particularity as required to support a UCL "fraudulent" claim. *See supra* § IV.D. And their "unfair" claim "cannot survive if the claims under the other two prongs of the UCL do not survive" given that it rests on the same conduct. *GMC Semitech Co. v. Cap. Asset Exchange and Trading, LLC*, No. 24-cv-09451-NC, 2025 WL 1236677, at *5 (N.D. Cal. Apr. 29, 2025). Moreover, Plaintiffs fail to allege any facts showing Google committed any "unfair" business practices under any of the potentially applicable tests because their Complaint simply parrots the language of those tests. *Compare* Compl. ¶ 426, *with San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1092 (N.D. Cal. 2018) (dismissing as unfair UCL claim as "too vague" where complaint parroted "tethering" test); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (same as to "balancing" test). For example, Plaintiffs fail to identify any specific practices by Google that run afoul of specific constitutional, regulatory, or statutory provisions, and they do not allege that their alleged injury could have reasonably been avoided. They also do not articulate any specific "negative impact" of any specific practice on them, personally, or grapple with whether any of that unidentified impact is outweighed by Google's reasons, justifications, or motives, or any of the benefits of Google's services to them and consumers at large—which are expressly recognized by the FTC's decision to give schools authority to consent to students' use of Google's services here. *See supra* § IV.B.

For all the foregoing reasons, Plaintiffs' UCL claim should be dismissed.

**5.** **Counts VII & VIII fail because Plaintiffs' common law privacy claims lack factual support.**

Plaintiffs fail to state a claim for invasion of privacy under either their public disclosure claim (Count VII) or their intrusion upon seclusion claim (Count VIII).

To plead a public disclosure claim, Plaintiffs must allege "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998). For intrusion upon seclusion, Plaintiffs must allege that Google "(1) intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,] and (2) the intrusion occur[red] in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (cleaned up). "Strictly speaking, these are distinct claims with different elements," but "it is appropriate to assess the two claims together and examine the largely parallel elements" when a plaintiff brings both claims on the same factual basis. *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019).

*First*, Plaintiffs fail to satisfy the "public disclosure" element for Count VII. *Shulman*, 18 Cal. 4th at 212. Plaintiffs do not plausibly plead that disclosure occurred at all, must less that one was "widely published," i.e., "communicat[ed] [] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 1004 (N.D. Cal. 2016). Plaintiffs' *only* allegations regarding disclosure either recite Google's own public statements regarding circumstances where it *might* make limited, non-public disclosures, *see, e.g.*, Compl. ¶¶ 187, 188, or they are conclusory, lacking any specificity about what is shared with whom or under what circumstances, *see, e.g.*, Compl. ¶¶ 150, 179, 434, 436.

Plaintiffs also allege that Google maintains an API that "is configured to connect with thousands of platforms," and that "Google admits that it has partnered with more than 20 EdTech companies for purposes of data sharing," including "Kahoot!, Pear Deck, IXL, ReadWorks, [and] Nearpod," Compl. ¶ 193. But Plaintiffs allege no facts to support the inference that *their*

information was disclosed through Google's API. More glaringly, they do not allege that *their* schools used any third-party apps. And even if they had, disclosure to a third party that operates an app that was installed by the school (*see* Bali Decl., Ex. 5) is not *public* disclosure by Google.

*Second*, Plaintiffs have identified no "private facts" or information over which they have an "objectively reasonable expectation" of privacy. Once again, Plaintiffs do not identify what GWFE services they used, how they used them, or what information they provided, so there are no grounds to infer that Google collected private facts about Plaintiffs. Once again, those "specifics are essential to convert a case like this from a law-school hypothetical to an actionable dispute." *Santoro*, 2024 WL 1773371, at *1 (dismissing intrusion upon seclusion claim). Nor do Plaintiffs specify whether their schools used Google to manage "disciplinary" or "health" records, despite including a lone, unexplained reference to such materials. Compl. ¶ 436. Plaintiffs also do not have a reasonable expectation in the privacy of information they allege Google collected *based on Google's own disclosures* of such collection. *See, e.g.*, Compl. ¶ 56; *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *15 (N.D. Cal. Dec. 3, 2013) (finding expectation of privacy *un*reasonable where Google disclosed the challenged practices); *Cabezas v. Craigslist, Inc.*, No. 21-CV-06513-RS (PR), 2023 WL 2484268, at *5 (N.D. Cal. Feb. 10, 2023) (finding no reasonable expectation of privacy where Craigslist "makes its users aware that 'The "real name" field (e.g. Jane Doe) in your email program is'" disclosed to other parties) (cleaned up).

*Third*, Plaintiffs do not plausibly allege highly offensive conduct by Google, which is a required element for both causes of action. As Plaintiffs acknowledge, "[s]chools have always collected certain personal information about students, and they must be able to continue to do so—within the bounds of the law." Compl. ¶ 12. It is consistent with "widely accepted community norms," *Hill v. Nat'l Coll. Athletic Assoc.,* 7 Cal. 4th 1, 37 (1994), for schools to rely on third-parties to provide technologies for educational use, as evidenced by COPPA and the FTC's interpretation of that Rule, *see supra* § IV.B, and by laws like FERPA and California Education Code § 49076(a). Plaintiffs have not identified any specific misrepresentations by Google. *See supra* § IV.D. And to the extent that Plaintiffs object that their use of Google

Chrome resulted in Google collecting information about them as it would for any ordinary, non-GWFE Chrome user, collection through such generally applicable practices is not offensive as a matter of law. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016) (dismissing intrusion upon seclusion claim where Google allegedly used third-party cookies on Nick.com "in the same way" as it used cookies on "myriad others websites").

### 6. Count IX fails because unjust enrichment is not a standalone claim and Plaintiffs are not entitled to restitution on a quasi-contract claim.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,'" so Plaintiffs' claims should be dismissed on this basis. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Nor can Plaintiffs' claim be salvaged by reinterpreting it "as a quasi-contract claim seeking restitution." *Id.* (citation omitted). To recover restitution based on a quasi-contract claim, a plaintiff must show that the defendant received and unjustly retained a benefit at plaintiff's expense. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs fail at every turn of this test.

Plaintiffs contend that Google benefited from its collection of personal information by earning profits and improving its products, Compl. ¶ 458, but they do not show that any such benefits were retained at their expense. Plaintiffs do not allege, for example, that they paid Google, or even that their schools did so. *See Doe v. Apple Inc.*, No. 24-CV-05107-NW, 2025 WL 1266928, at *10 (N.D. Cal. May 1, 2025) (explaining that plaintiff's "engagement" in defendant's "ecosystem" did not constitute a "benefit," and requiring allegations that defendant benefited at plaintiff's expense, for example, by paying for services); *Tilley v. Ampro Mortg.*, No. CIV. S-11-1134 KJM CKD, 2011 WL 5921415, at *9 (E.D. Cal. Nov. 28, 2011) (insufficient to allege "profit[] from 'using [p]laintiff's identity, credit score, and reputation'").

Nor have Plaintiffs "plausibly pleaded an actionable wrong." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022). For enrichment to be "unjust," Plaintiffs must plausibly allege "qualifying [mis]conduct" by Google. *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1333 (N.D. Cal. July 5, 2023). They have not done so here, where Google acted lawfully by disclosing its practices and obtaining consent from Plaintiffs' schools consistent with COPPA.

*See Markels v. AARP*, 689 F. Supp. 3d 722, 731 (N.D. Cal. 2023) (restitution inappropriate where privacy policy informs users of data sharing at issue).

Finally, as with their UCL claim for restitution, dismissal is warranted because Plaintiffs have not shown that they lack an adequate remedy at law. *See supra* § IV.E.4.

## V.    CONCLUSION

For the above reasons, Google respectfully asks the Court to dismiss the Complaint.

Dated:  July 14, 2025                                            **PERKINS COIE LLP**


                                                          By: */s/ Sunita Bali*
                                                            Sunita Bali (Bar No. 274108)
                                                            Lauren J. Tsuji (Bar No. 300155)
                                                            Anna Mouw Thompson (*Pro Hac Vice*)


                                                          *Attorneys for Defendant GOOGLE LLC*