Rebecca A. Peterson (241858)
RPeterson@4-justice.com
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173

Lori G. Feldman (*pro hac vice*)
LFeldman@4-justice.com
Michael Liskow (SBN 243899)
MLiskow@4-Justice.com
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel.: (718) 878-6433
Fax: (888) 421-4173

Julie U. Liddell (*pro hac vice*)
julie.liddell@edtech.law
W. Andrew Liddell (*pro hac vice* forthcoming)
andrew.liddell@edtech.law
P.O. Box 300488
Austin, Texas 78705
Tel.: (737) 351-5855
**EDTECH LAW CENTER PLLC**

Daniel E. Gustafson (*pro hac vice*)
dgustafson@gustafsongluek.com
Catherine Sung-Yun K. Smith (*pro hac vice*)
csmith@gustafsongluek.com
Shashi K. Gowda (*pro hac vice*)
sgowda@gustafsongluek.com
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
**GUSTAFSON GLUEK, PLLC**

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL SCHWARZ, on behalf of his minor child B.S., EMILY DUNBAR, on behalf of her minor child H.D., and MICHAEL GRIDLEY and ELIZABETH GRIDLEY, on behalf of their minor children A.G. and Z.G., individually and on behalf of all others similarly situated, | Civ. No. 3:25-cv-03125-RS |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** |
|      Plaintiffs, | |
|   v. | Date: October 16, 2025 |
| GOOGLE LLC, | Time: 1:30 p.m. |
| | Court: Courtroom 3, 17th Floor |
|      Defendant. | Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

LEGAL STANDARD ....................................................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

    A.  Plaintiffs' Complaint satisfies Rule 8. .................................................................................. 2

        1.    The allegations adequately describe the data Google has taken from Plaintiffs. ............................. 2

          a.    Google's products allegedly took Plaintiffs' data as described in its terms. ................................ 2

          b.    Forensic analysis also supports Plaintiffs' allegations. ............................................................ 4

          c.    Google's cited authority is distinguishable while *Cherkin* is not. ........................................... 5

        2.    Google alone possesses the heightened detail it faults Plaintiffs for not providing. ....................... 6

    B.  Federal privacy laws do not absolve Google of its duty to obtain parental consent. .......................... 7

        1.    COPPA requires parental consent and does not create a school-consent exception. ..................... 8

          a.    Google relies on an expressly non-binding COPPA "FAQ" for small entities. ........................... 8

          b.    COPPA unambiguously requires parental consent. .................................................................. 9

          c.    The FAQ is unpersuasive in construing "reasonable efforts." ............................................... 10

          d.    The FTC recently stated that schools may not consent in lieu of parents. ............................... 11

        2.    FERPA does not support dismissal. ...................................................................................... 12

    C.  Any purported consent does not preclude Plaintiffs' federal claims. ................................................ 12

        1.    The doctrines of apparent authority and *in loco parentis* are inapplicable. .................................. 13

        2.    The party exception does not foreclose Plaintiffs' federal wiretap claim. ................................... 14

    D.  Plaintiffs meet the heightened fraud pleading standard where required. ......................................... 14

    E.  Plaintiffs' claims do not fail for independent reasons. .................................................................. 16

        1.    Plaintiffs state claims under 42 U.S.C. § 1983. ..................................................................... 16

          a.    Google is a state actor for purposes of its student-data practices. ............................................ 16

          b.    Plaintiffs allege constitutional violations. ............................................................................ 19

        2.    Plaintiffs state a claim under both FWA and CIPA. ............................................................... 20

        3.    Plaintiffs state a claim under CDAFA. ................................................................................. 21

        4.    Plaintiffs have standing to bring their UCL claim. ................................................................. 23

        5.    Plaintiffs state common-law privacy claims. ......................................................................... 24

        6.    Plaintiffs state an unjust-enrichment claim. .......................................................................... 24

CONCLUSION ................................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*A.B. ex rel v. Google LLC*,
    737 F. Supp. 3d 869 (N.D. Cal. 2024) ................................................................. 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 1, 5, 7

*Avila v. Spokane Sch. Dist.*
    *81*, 852 F.3d 936 (9th Cir. 2017) ..................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 1

*Bethel Sch. Dist. v. Fraser*,
    478 U.S. 675 (1986) .................................................................................. 13

*Brannum v. Overton Cnty. Sch. Bd.*,
    2006 WL 8445313 (M.D. Tenn. June 20, 2006) ..................................................... 17

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
    531 U.S. 288 (2001) ............................................................................... 16, 18

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................... 3, 14, 22

*Brown v. Google LLC*,
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ......................................................... 23

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................................. 4, 23

*Calhoun v. Google*, LLC, 113 F.4th 1141 (9th Cir. 2024) ............................................... 7

*Caviness v. Horizon Community Learning Center, Inc.*,
    590 F.3d 806 (9th Cir. 2010) ......................................................................... 17

*Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706-JD, 2025 WL 844378
    (N.D. Cal. Mar. 17, 2025) .......................................................................... 5, 6

*Christensen v. Harris Cnty.*,
    529 U.S. 576 (2000) ................................................................................... 9

*Ctr. for Biological Diversity v. Raimondo*,
    661 F. Supp. 3d 964 (N.D. Cal. 2023) ............................................................. 9, 10

*Demetrius Smith, et al. v. Rack Room Shoes, Inc.*,

2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)........................................................................22

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023).........................................................................14

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016).......................................................................................24

*FCA US, LLC*,
  2024 WL 1625771 (S.D. Cal. Mar. 28, 2024)................................................................20

*Flores v. Cnty. of Los Angeles*,
  2007 WL 9706114 (C.D. Cal. Dec. 19, 2007)..................................................................7

*Frasco v. Flo Health, Inc.*,
  2024 WL 4280933 (N.D. Cal. Sept. 23, 2024)...............................................................22

*Grinnell v. Charles Pfizer & Co.*,
  274 Cal. App. 2d 424 (Ct. App. 1969)...........................................................................15

*Grp., Inc. v. Hewitt*,
  598 U.S. 39 (2023).........................................................................................................10

*Hasso v. Hapke*,
  227 Cal. App. 4th 107 (2014).........................................................................................15

*Hernandez-Silva v. Instructure, Inc.*,
  2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)....................................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020).........................................................................................22

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020).............................................................................2

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015)...........................................................................................20

*In re Google RTB Consumer Priv. Litig.*,
  606 F. Supp. 3d 935 (N.D. Cal. 2022)...........................................................................14

*In re Google RTB Consumer Priv. Litig.*,
  606 F. Supp. 947............................................................................................................23

*Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988).........................................................................................18

*Jane Doe, et al., v. GoodRX Holdings, Inc., et al.*,
  2025 WL 2052302 (N.D. Cal. July 22, 2025)..............................................7, 22, 23, 24

*Johnson-Jack v. Health-Ade LLC*,
   587 F. Supp. 3d 957 (N.D. Cal. 2022) ...................................................................23

*Khan v. CitiMortgage, Inc.*,
   975 F. Supp. 2d 1127 (E.D. Cal. 2013) ..................................................................14

*Kirtley v. Rainey*,
   326 F.3d 1088 (9th Cir. 2003) ...............................................................................16

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) .................................................................................7

*LiveRamp*,
   2025 WL 2021802 ..............................................................................14, 19, 21, 24

*Margolis v. Apple Inc.*,
   743 F. Supp. 3d 1124 (N.D. Cal. 2024) ...........................................................14, 21

*Meta Pixel Tax Filing*,
   724 F.Supp. 3d 987 ......................................................................14, 20, 23, 25

*New Mexico ex rel. Balderas v. Google, LLC*,
   489 F. Supp. 3d 1254 (D.N.M. 2020) .....................................................................10

*Minx Int'l, Inc. v. M.R.R. Fabric*,
   2015 WL 12645752 (C.D. Cal. Feb. 11, 2015) .......................................................25

*Naffe v. Frey*,
   789 F.3d 1030 (9th Cir. 2015) ...............................................................................16

*Occidental Land, Inc. v. Superior Ct.*,
   18 Cal. 3d 355 (1976) ............................................................................................15

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
   2024 WL 3914663 (C.D. Cal. May 30, 2024) .........................................................22

*Patrick v. Success Acad. Charter Sch., Inc.*,
   354 F. Supp. 3d 185 (E.D.N.Y. 2018) ....................................................................17

*POM Wonderful LLC v. Coca-Cola Co.*,
   573 U.S. 102 (2014) .................................................................................................9

*Q.J., et al., v. PowerSchool*,
   2025 WL 2410472 (N.D. Ill. Aug. 20, 2025).........................................................14

*Rawson v. Recovery Innovations, Inc.*,
   8 975 F.3d 742 (9th Cir. 2020) ....................................................................16, 17, 19

*Rendell–Baker v. Kohn*,
   457 U.S. 830 (1982) ...............................................................................................17

*Rodriguez v. Google LLC*,
    772 F. Supp. 3d 1093 (N.D. Cal. 2025)...........................................................3, 22

*Rogers v. Roseville SH, LLC*,
    75 Cal. App. 5th 1065 (2022).......................................................................13

*Safford Unified Sch. Dist. #1 v. Redding*,
    557 U.S. 364 (2009).....................................................................................14

*Santoro v. Tower Health*,
    2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .............................................5

*Shanahan v. IXL Learning, Inc.*,
    2024 WL 4658276 (N.D. Cal. Nov. 1, 2024)..............................................13

*Shanahan v. IXL Learning, Inc.*,
    No. 24-6985 (9th Cir.) ...............................................................................11

*Sheppard v. David Evans & Assoc.*,
    694 F.3d 1045 (9th Cir. 2012).................................................................5, 7

*Softketeers, Inc. v. Regal W. Corp.*,
    2023 WL 2024701 (C.D. Cal. Feb. 7, 2023) ..............................................24

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010)...................................................................5, 7

*Toole v. Richardson-Merrell Inc.*,
    251 Cal. App. 2d 689 (Ct. App. 1967) ........................................................15

*Tucson Woman's Clinic v. Eden*,
    379 F.3d 531 (9th Cir. 2004).......................................................................19

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015).......................................................................21

*United States v. Davis*,
    332 F.3d 1163 (9th Cir. 2003) .....................................................................13

*United States v. E. Mun. Water Dist.*,
    2008 WL 11333849 (C.D. Cal. Apr. 3, 2008)................................................7

*Vernonia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995).....................................................................................13

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001)........................................................15

*West v. Atkins*,

487 U.S. 42 (1988) .................................................................................................................. 15

**Statutes**

5 U.S.C. § 601 ........................................................................................................................ 9

15 U.S.C. § 6501 .................................................................................................................... 8

15 U.S.C. § 6501(9) ............................................................................................................... 9

15 U.S.C. § 6501(b)(2) ......................................................................................................... 10

15 U.S.C. § 6502 .................................................................................................................... 8

15 U.S.C. § 6502(B)(1)(b) ..................................................................................................... 6

18 U.S.C. § 2511(2)(d) ........................................................................................................ 14

20 U.S.C. § 1232g(b)(1)(A) ................................................................................................. 12

Public Law No. 104-121 ........................................................................................................ 9

**Regulations**

16 C.F.R. § 312.1 ................................................................................................................... 8

16 C.F.R. § 312.6 ................................................................................................................... 6

16 C.F.R. §§ 312.3–312.10 .................................................................................................... 8

34 C.F.R. § 99.31 ................................................................................................................. 12

34 C.F.R. § 99.31(a)(1)(A) ................................................................................................... 18

34 C.F.R. §§ 99.30(a), 99.31(a)(1)(i) .................................................................................. 12

Final Rule Amendments, 90 Fed. Reg. 16918 (April 22, 2025) .......................................... 10

Notice of Proposed Rulemaking, 89 Fed. Reg. 2034 (January 11, 2024) ........................... 10

Purpose for Final COPPA Rule, 64 Fed. Reg. 59888 (November 3, 1999) ......................... 10

**Other Authorities**

144 Cong. Rec. S8483 ............................................................................................................ 8

Restatement (Second) of Torts § 533 ................................................................................... 15

The central issue in this case is whether Defendant Google LLC ("Google") obtains effective consent before taking and using personal information from students in the compulsory setting of K–12 education, including from Plaintiffs. Plaintiffs allege that it does not: any purported consent obtained by Google was not informed, freely given, or provided by a person with authority to do so.

Consistent with its invasive data practices, in its motion to dismiss Plaintiffs' Complaint ("Motion" or "Mot.") Google is hostile to the rights of students and parents, including their right to access the courts.[1] And Google's theory of consent rests entirely a mistake of law: that statutes that enhance children's privacy instead undermine it, specifically, by letting a private company take and use all manner of personal information from students—as long as the company has obtained consent from the students' schools. This radical position finds no support in the law, especially not in laws enacted to protect children's information and parents' rights over that information.

Families may not be stripped of their basic rights in exchange for the education to which they are legally entitled. By attending school as is their right and duty, children and their parents do not relinquish their right to decide what personal information may be collected about them and how it may be used. This is not, and cannot be, the new cost of education. Google may provide student information services to schools, but it may not violate the rights of children by exploiting their personal information for commercial gain without effective consent.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all allegations as true, and a claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Google criticizes Plaintiffs' counsel for bringing this lawsuit and others like it, Mot. at 4, but challenging industry-wide abuses in court is neither new nor untoward. To the contrary, consumer-protection lawsuits drove reform of the tobacco, automobile, asbestos, and opioid industries, and they assume special importance when aimed at protecting children from systemic harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

**A.     Plaintiffs' Complaint satisfies Rule 8.**

Google's argument that Plaintiffs' allegations are inadequate because they are based on "rhetoric and policy grievances"[2] is baseless. Mot. at 6–7.

**1.     The allegations adequately describe the data Google has taken from Plaintiffs.**

Even a cursory review of the Complaint shows that the allegations are adequate because they are based on Google's own statements about its data practices, Plaintiffs' allegations about the Google products they personally used, and forensic analysis that revealed technical details about Google's data collection within those products.

### a.     Google's products allegedly took Plaintiffs' data as described in its terms.

Plaintiffs allege that they used and continue to use Google's K–12-marketed products, including the Google Workspace for Education ("WFE") suite of cloud-based applications and the Chrome browser, which they access using a Chromebook. ECF 1, ¶¶ 20, 22, 24, 25.[3] Plaintiffs allege that every edition of WFE includes "Core Services" applications and that the Chrome browser is the "primary gateway" to those applications. ¶¶ 45–47, 51. Google's terms and policies ("Terms") describe its data practices with respect to Core Services and the Chrome browser ("Products"). ¶¶ 55, 56. Plaintiffs' allegations rely on those statements regarding what data is collected from students, how student data is used, and who has access to student data. That is not novel: plaintiffs routinely rely on a company's own terms in support of their factual allegations. *See*, *e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (noting that Google's terms of service and privacy policy formed the basis of Plaintiffs' claims).

What distinguishes this case is that Plaintiffs allege they did not consent to *any* of Google's data practices, *including* those described in its Terms. ¶¶ 105–171. Google's Terms constitute

---

[2] Google mischaracterizes descriptive, academic terms like "surveillance capitalism" as "rhetoric." *See*, *e.g.*, Shoshana Zuboff, *The Age of Surveillance Capitalism* (2019) (Harvard professor *emerita* coining term "surveillance capitalism" to describe the business model that Google invented).
[3] All references to the Complaint are cited as "¶."

admissions about what student data it collects and how it uses that data. Though Google often cites its terms in defense against liability under a notice-and-consent theory, that defense is unavailable here because there is no notice of or consent to *any* of Google's Terms.[4] So Plaintiffs rely on Google's own statements about how it takes and uses students' personal information when they use Google's Products to support their allegations that Google *does* in fact take and use students' personal information—including Plaintiffs' personal information—exactly as Google describes. Therefore, unlike other data-privacy cases, this dispute concerns, not whether Google exceeded its stated data practices, but whether its stated data practices are lawful in the absence of effective consent.

Accordingly, relying on Google's own statements, Plaintiffs allege that when they use Core Services Google collects their personal information, including their names and email addresses; content they have created, viewed, or interacted with; their geolocation information, including their IP addresses; technical information, including details about their devices, operating systems, browser, and settings; how they use its Products; their Chrome browsing history; and their website interactions, among other information. ¶¶ 54–56, 69. Google's admissions establish that it is *impossible* for students, including Plaintiffs, to interact with its Products without Google collecting troves of their personal information.

Plaintiffs further allege that those Products are embedded in curricula and their use is mandatory, enabling Google to collect extensive student data over the course of a student's academic career. ¶¶ 155–157. Similarly, Google advises schools that they should warn parents that their children's inability to use Google's Products "will impact the education experience," including by compromising children's ability to "complete assignments or collaborate with peers[.]" ¶ 159. These statements illustrate that student use of Google's Products is routine and extensive.

---

[4] Google routinely relies on its own terms to attempt to escape liability for its data practices. *See*, *e.g.*, *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1100-03 (N.D. Cal. 2025) (Seeborg, J.) (Google argued plaintiffs consented to its data practices because the practices were disclosed in its terms); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926-27 (N.D. Cal. 2023) (same). Even in the present case, Google extensively cites its terms in defense of the alleged conduct and requests judicial incorporation of some of those terms. Mot. at 3, 4, 9, 10, 12, 16, 21; Exs.1–6. Google may not alternately invoke or eschew its own terms as convenient for avoiding liability.

Google's Motion and exhibits further bolster Plaintiffs' allegations. The WFE Privacy Policy identifies two categories of data collected through WFE Core Services. ECF 31-3 at 4. The first is information created or provided by the user, including "anything submitted, stored, sent or received through core services by" a student or the school. *Id*. The second is information collected automatically when a student uses Core Services, such as name and email; use activity, such as content accessed or created and student communications; extensive data about settings, apps, browser, and device, such as unique identifiers and IP address; and location information. *Id*. at 5. Google thus collected this information from Plaintiffs automatically when they used its Products. *See also* Mot. at 10 (describing data collected automatically). That information alone supports Plaintiffs' claims.[5]

### b.  Forensic analysis also supports Plaintiffs' allegations.

In addition to Google's own admissions about its data practices, Plaintiffs allege that forensic testing revealed that their data was surreptitiously collected by Google. One example is data extracted through embedded tracking technology known as "browser fingerprinting," which is not described in Google's terms. ¶¶ 57–61. That technology collects data about a child at the browser level, which Google uses to create a persistent unique identifier, or "fingerprint," of the child. *Id*. Google then uses the child's fingerprint to track her online activity across the internet, including when she uses the Chrome browser, as Plaintiffs do. *Id*. As Google itself has stated, such information "would paint an incredibly intimate picture of an individual's life." ¶ 72; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 622 (N.D. Cal. 2021) (defining "personal information" under California law).

These allegations, taken as true and construed in the light most favorable to Plaintiffs, show that Google collected wide-ranging personal information from Plaintiffs any time they used its

---

[5] Google complains that it must review "more than 75 pages" in order to understand Plaintiffs' claims. Mot. at 6. Yet the terms governing Google's data practices span the equivalent of hundreds of printed pages scattered across myriad webpages. ¶¶ 95–102. Google cannot credibly argue that Plaintiffs' Complaint is impermissibly "confusing," Mot. at 7, without also admitting that its disclosures are legally inadequate. Further, that each is lengthy is no coincidence: the Complaint is as long as necessary to describe Google's extensive wrongdoing; and, presumably, Google's disclosures are as long as necessary to describe its massive, complex, and ever-changing data-harvesting program—which, in the context of K–12 education, operates entirely without effective consent.

Products. Taken together with Plaintiffs' statements about their use of Google's Products and Google's admissions about how it collects and uses student data, Plaintiffs' allegations adequately support Plaintiffs' claims at this stage. *See Iqbal*, 556 U.S. at 678; *see also Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (concluding complaint alleged an "entirely plausible scenario" of the claim brought, "whether or not it describes what 'really' went on in" the case) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)).

### c. Google's cited authority is distinguishable while *Cherkin* is not.

Google argues that the Complaint fails to allege specific facts necessary "'to convert a case like this from a law-school hypothetical to an actionable dispute,'" citing *Santoro v. Tower Health*, No. CV 22-4580, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024), an unreported pixel-tracking case from Pennsylvania. Mot. at 15. But that case is distinguishable.

The *Santoro* plaintiff claimed that defendant hosted a website that employed a Meta tracking pixel that intercepted and transmitted certain data from website users to Meta. *Santoro*, 2024 WL 1773371, at *1. Unlike the present case, there was no indication that his allegations were supported by the defendant's own admissions that the Meta pixel intercepted the data at issue in that case, namely, "individually identifiable health information" as defined under the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at *4. The court held that the plaintiff's allegations were inadequate because they did "not explain the nature of the personal information allegedly captured by the Meta Pixel." *Id.* at *1. The court reasoned that, because the plaintiff did not describe how he had used the defendant's website, it was impossible to determine from his allegations whether the defendant had in fact collected HIPAA-protected information. *Id.* at *4.

Unlike *Santoro*, Plaintiffs' claims do not require that Plaintiffs allege that Google collected specific types of personal information when they used its Products that might require a description of how they interacted with its Products to determine whether such information was collected. Further, Plaintiffs' allegations are more robust than those in *Santoro*. As previously detailed, Plaintiffs allege that Google has collected all manner of their personal information—based on their use of its Products,

Google's own admissions about its data practices, and forensic evidence—all without first obtaining effective consent. These allegations amply satisfy applicable pleading requirements.

A case far more on point is *Cherkin v. PowerSchool Holdings, Inc*., No. 24-CV-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025). As Google states, that case involves allegations similar to those made in this case. Mot. at 4. Google notes that another court in this District partially granted PowerSchool's motion to dismiss without mentioning that the court denied PowerSchool's motion as to five of the plaintiffs' eight claims, including four of the claims brought in this case (intrusion upon seclusion, CIPA, CDAFA, and unjust enrichment). *Cherkin*, 2025 WL 844378, at *7 (Donato, J.). The court concluded that, "[o]verall, these well-pleaded allegations, and others in the complaint, plausibly allege that the PowerSchool is misappropriating sensitive information about students, including their identities, academics, health, behavior, and web-browsing habits" through its various applications and software used by students as part of their curriculum. *Id*. at *2. Similarly, the allegations here plausibly allege that Google is misappropriating personal information about students, including Plaintiffs, in violation of state and federal law.[6]

### 2. Google alone possesses the heightened detail it faults Plaintiffs for not providing.

Although Plaintiffs' allegations are robust, they would have been even more detailed but for Google's own wrongdoing, specifically, its refusal to provide parents access to their children's data taken by Google "upon request of a parent," as required under the Children's Online Privacy Protection Act ("COPPA"). 15 U.S.C. § 6502(B)(1)(b); 16 C.F.R. § 312.6.

When Plaintiffs Dunbar, Gridley, and Schwarz requested access to their children's data, Google refused, referring them to their schools, in violation of COPPA. ¶¶ 111–114. But schools are not responsible for fulfilling Google's legal obligations, and Google does not enable schools to

---

[6] In another similar case, *Hernandez-Silva v. Instructure, Inc*., No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210, *1 (C.D. Cal. Aug. 4, 2025) (Blumenfeld, J.), the court dismissed the plaintiffs' two state action claims with prejudice and otherwise granted leave to amend. The court concluded that the plaintiffs had "not plausibly alleged any specific facts about the taking or use of their data[.]" The plaintiffs requested dismissal with prejudice of all claims so that they could appeal the court's application of the liberal pleading requirements of Rule 8 to their allegations.

provide parents access to all the data Google collects from students. ¶¶ 115–119. As a result, "[s]tudents and their parents do not and cannot know the full extent of the data Google obtains about them, whether that data is accurate, how that data is stored, how long that data is retained, who has access to that data, or how that data or data-derivative information or products are used." ¶ 122. Google may not unlawfully withhold information from Plaintiffs and then fault them for not having it, particularly when it is information to which only Google has access. *See United States v. E. Mun. Water Dist.*, 2008 WL 11333849, at \*4 (C.D. Cal. Apr. 3, 2008) ("[E]quity will not permit one to rely on one's own misconduct."); *see also Jane Doe, et al., v. GoodRX Holdings, Inc., et al.,* 2025 WL 2052302, \*7 (N.D. Cal. July 22, 2025) (finding allegations sufficient where "only Defendants would possess" the details they faulted the plaintiffs for not providing); *Flores v. Cnty. of Los Angeles*, 2007 WL 9706114, \*3 (C.D. Cal. Dec. 19, 2007) (observing that "realistic, common-sense application of pleading standards must account for Plaintiffs' excusable lack of detail concerning" defendant's conduct) (cleaned up); *Swanson*, 614 F.3d at 404 (a court must consider "how much detail realistically can be given" by the plaintiff) (cited with approval by *Sheppard*, 694 F.3d at 1050).

Despite that Google unlawfully withheld relevant information from Plaintiffs, the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" beyond "a sheer possibility[.]" *Iqbal*, 556 U.S. at 678. And the allegations are sufficient to give Google "fair notice" and enable Google "to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (cleaned up).

**B.    Federal privacy laws do not absolve Google of its duty to obtain parental consent.**

Plaintiffs allege that Google did not obtain effective consent before taking and using their personal data ¶¶ 104–171. It is Google's burden to prove that it did. *Calhoun v. Google*, LLC, 113 F.4th 1141, 1147 (9th Cir. 2024). Instead of arguing that it did obtain consent from Plaintiffs or their parents before it collected and used Plaintiffs' data, Google admits that it didn't, contending that it was not required to and was instead permitted to obtain consent from school personnel alone, citing

COPPA and the Family Educational Rights and Privacy Act ("FERPA"). Mot. at 4, 7–8. But those laws do not support Google's argument and in fact undermine it.

### 1.     COPPA requires parental consent and does not create a school-consent exception.

COPPA is a federal law enacted by Congress to afford children under 13 greater privacy protections by expanding parents' rights over what information internet companies may collect about their children and how that information may be used. *See* 15 U.S.C. § 6501 *et seq*; 144 Cong. Rec. S8483 (July 17, 1998) (statement of Sen. Bryan explaining that COPPA provides "safeguards against the online collecting of information from children without a parent's knowledge or consent."). COPPA creates a detailed statutory and regulatory regime governing a company's collection and use of children's data. Among its terms are heightened notice-and-consent requirements, as well as terms governing parental rights to access and control their child's data, data-minimization requirements, and retention limits. 15 U.S.C. § 6502; 16 C.F.R. §§ 312.3–312.10.

By their clear terms, the COPPA enabling statute and its implementing rule ("Rule") expressly require that a company obtain verifiable *parental* consent before it may collect and use children's personal information. *See* 15 U.S.C. § 6501 *et seq*., 16 C.F.R. § 312.1 *et seq*. They do not permit schools to stand in parents' shoes or designate schools as parents' agents as a matter of law.

### a.  Google relies on an expressly non-binding COPPA "FAQ" for small entities.

First, Google mischaracterizes Plaintiffs' allegations as requiring that Google obtain consent *directly* from parents. Mot. at 7. In fact, Plaintiffs allege that Google failed to obtain parental consent by *any* means. ¶¶ 104–142. And Google itself does not contend that it obtained parental consent through schools, instead arguing that it may rely on school consent alone. Mot. at 4.

Google contends that Plaintiffs' position is "squarely in conflict with COPPA, as made clear by the FTC's guidance, which confirms that, 'yes,' 'an educational institution [can] consent to a website or app's collection, use or disclosure of personal information from students.'" *Id*. at 8. In support, Google cites, not the COPPA statute or Rule, but a "Frequently Asked Questions" business guide posted on the FTC's website ("FAQ"). *See* Fed. Trade Comm'n, "Complying with COPPA:

Frequently Asked Questions," N.1., (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#Schools (accessed July 18, 2025). *See* Ex. 1 to the Declaration in Support of Request for Judicial Notice (ECF No. 35-1) ("Ex. 1"). The FAQ is subtitled "A GUIDE FOR BUSINESS AND PARENTS AND SMALL ENTITY COMPLIANCE GUIDE." *See id*.[7] The FAQ contains a disclaimer that it is not binding on the FTC, is distinct from the Rule and compliance materials, and pertains only to small entities:

> "**This document represents the views of FTC staff and is not binding on the Commission.** To view the Rule and compliance materials, go to the FTC's Children's Privacy page for businesses [https://www.ftc.gov/business-guidance/privacy-security/childrens-privacy]. This document serves as a small entity compliance guide pursuant to the Small Business Regulatory Enforcement Fairness Act."

*Id*. (emphasis in original). Thus, stating Google's argument accurately, Plaintiffs' position conflicts, not with COPPA, but with statements in a non-binding FTC guide for small businesses.[8]

### b. COPPA unambiguously requires parental consent.

Google contends that this supposed law preempts Plaintiffs' state-law claims, effectively arguing that the FAQ provides a legal definition of what constitutes a "reasonable effort" to obtain parental consent under the COPPA statute. Mot. 7–8 (citing 15 U.S.C. § 6501(9)). In construing a statute, however, a court's "analysis begins and ends with the text." *Ctr. for Biological Diversity v. Raimondo*, 661 F. Supp. 3d 964, 969 (N.D. Cal. 2023). If "the statutory language is unambiguous and the statutory scheme is coherent and consistent," the court's "inquiry must cease." *Id*. (cleaned up). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017) (cleaned up). Only if the text is ambiguous may the court "employ other tools, such as legislative history, to construe the meaning of

---

[7] Google does not seek judicial notice of this guide, so it should not be considered. To the extent the Court considers it, Plaintiffs request judicial notice of the entire guide to contextualize Google's excerpts. *See* Ex. 1 (ECF No. 35-1).

[8] Contrary to Google's contention, the guide is not for multitrillion-dollar "businesses like Google," Mot. at 4, as it is expressly intended only for "small entities." *See* Small Business Regulatory Enforcement Fairness Act of 1996; Public Law No. 104–121 (Mar. 29, 1996); 5 U.S.C. § 601, note.

ambiguous terms." *Id*. One such tool is informal agency guidance, which may be considered only to the extent that it has "the power to persuade[.]" *Christensen v. Harris Cnty*., 529 U.S. 576, 587 (2000) (cleaned up); *see also POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 112 (2014) (noting that traditional rules of statutory interpretation do not "change because an agency is involved").

Google simply ignores this first step: it does not even contend that the cited language is ambiguous, let alone demonstrate ambiguity through textual analysis of COPPA. Instead, it skips straight to invoking informal regulatory guidance. Having failed to identify any ambiguity, Google may not rely on the FTC's FAQ. *See Raimondo*, 661 F. Supp. 3d at 969 n.2 (holding that defendant failed to argue that agency interpretation was entitled any measure of deference and that, in any event, none was permitted because statute was unambiguous); *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 59 (2023) ("[E]ven the most formidable policy arguments cannot overcome a clear textual directive.") (cleaned up).

### c. The FAQ is unpersuasive in construing "reasonable efforts."

Even if Google had demonstrated ambiguity, the FAQ is unpersuasive in determining what constitutes "reasonable efforts" to obtain parental consent. Nothing in the statute or Rule suggests that a company meets that requirement by obtaining the consent of school personnel alone. Indeed, that would ensure that the person providing consent is *not* the child's parent. And no canon of construction would permit "reasonable efforts" to be construed as no efforts whatsoever. Rather, the statute specifically enumerates circumstances that do not require parental consent, which do not include when a child is using an online service at school.[9] 15 U.S.C. § 6501(b)(2). Further, nothing in the statute or Rule permits companies to shift the burden of obtaining parental consent to schools, as the FAQ makes clear: "Importantly, operators should not state in Terms of Service or anywhere else that the school is responsible for complying with COPPA, as it is the responsibility of the operator

---

[9] If extratextual analysis was permitted, a significant consideration is that the FTC has *twice considered and declined* to codify this guidance. *See* Statement of Basis and Purpose for Final COPPA Rule, 64 Fed. Reg. 59888, 59903 (November 3, 1999) (exception not codified); Notice of Proposed Rulemaking, 89 Fed. Reg. 2034, 2040 (January 11, 2024) (proposal to codify); Final Rule Amendments, 90 Fed. Reg. 16918 (April 22, 2025) (exception not codified).

1   to comply with the Rule." Ex. 1 at 47 (ECF No. 35-1). The FAQ also states that it is non-binding and
2   intended only for small entities, further diminishing any persuasive value it may have.

3        Instead of undertaking the requisite analysis, Google cites *New Mexico ex rel. Balderas v.*
4   *Google, LLC*, Mot. at 8, which found the FAQ "persuasive" because "schools communicate with and
5   obtain consent from parents and guardians they regularly contact for any number of other school-
6   based activities." 489 F. Supp. 3d 1254, 1261 (D.N.M. 2020)). But, like Google, the *Balderas* court
7   failed to undertake the textual analysis necessary to resolve any ambiguity before relying on
8   extratextual tools such as regulatory guidance. *Id.* at 1260–62.

9        Further, the cited language concerned an entirely different provision of the FAQ, which states
10  that a company may rely on a third party to *obtain parental consent*. *Id*. at 1261(citing FAQ at I.10).
11  By contrast, Plaintiffs in the present case do not argue that Google could not have worked with schools
12  to obtain parental consent, and Google does not argue that it relied on schools to obtain parental
13  consent. Google instead argues that it need not obtain parental consent *at all*, a position not supported,
14  and in fact refuted, by the text of the COPPA statute and Rule.

15       **d.  The FTC recently stated that schools may not consent in lieu of parents.**

16       Contrary to Google's assertion that the FTC has affirmed that operators may rely on schools
17  to provide consent, Mot. at 8, the FTC has recently confirmed that they may *not*. On August 13, 2025,
18  the FTC filed an *amicus curiae* brief in *Shanahan v. IXL Learning, Inc.*, No. 24-6985 (9th Cir.). *See*
19  Ex. 2. In that pending appeal, IXL Learning, Inc. ("IXL") argues that COPPA permits a company to
20  bind children and their parents to the company's terms of use, including an arbitration provision, on
21  the basis of a school's consent alone. *Id*. at 7. In support, IXL relies on a passage in the Statement of
22  Basis and Purpose ("SBP") accompanying the COPPA Rule when first promulgated. *Id*. at 13 (citing
23  64 Fed. Reg. 59888, 59903 (Nov. 3, 1999)). The FTC unequivocally refuted IXL's argument as not
24  "remotely support[ed]" by the COPPA statute, Rule, SBP, or the FTC's enforcement history. *Id*. at 18.
25  Explaining that the purpose of COPPA was to *enhance* parental rights and children's privacy, *id*. at 11,
26  the FTC stated that "[n]either the statute nor the FTC's COPPA Rule bind the parents of school

children to the contractual terms of educational technology service agreements between schools and service providers like IXL," *id*. at 8. It noted that "the text of the statute and the rule make clear that" nothing in COPPA empowered schools to act as parents' agent "by operation of law or otherwise." Id. at 13. Google cites no authority that would compel a different conclusion regarding FTC statements found in an online FAQ for small businesses rather than in the Federal Register.[10]

### 2.     FERPA does not support dismissal.

Google also seems to suggest that FERPA shields it from liability. Mot. at 4, 21. It contends that, "[p]ursuant to FERPA, schools may share student 'education records' with Google without parental consent when Google acts as a 'school official.'" Mot. at 4 (citing 34 C.F.R. § 99.31). First, FERPA regulates schools, not private companies. 20 U.S.C. § 1232g(a)Accordingly, the school-official exception provides that *schools* may disclose education records to third parties without parental consent under certain narrow conditions.[11] *Id*. at § 1232g(b)(1)(A). But Plaintiffs have sued Google, not their schools. Second, FERPA was enacted to protect student privacy and parents' rights, not undermine them. *See Cherkin*, 2025 WL 844378, at *2. Third, even if Google could invoke FERPA, which it plainly cannot, the Complaint alleges facts showing that Google's conduct does not meet the school-official exception, which, at this stage, must be taken as true. ¶¶ 143–151.

### C.     Any purported consent does not preclude Plaintiffs' federal claims.

Google argues that consent bars Plaintiffs' federal claims, Mot. at 8, but again fails to carry its burden of proving that Plaintiffs consented to its data practices.

---

[10] Even if the FAQ could be considered and was persuasive, the purported school exception to parental consent it describes involves several fact issues that are contested by Plaintiffs and may not be resolved at this stage, such as whether Google provided schools the requisite notice, used data only as specified, and complied with schools' requests for information. *See* FAQ at N.1; ¶ 108.

[11] Under strictly limited circumstances, a contractor may be considered a "school official," but only if it (1) performs an institutional service or function for which the school would otherwise use employees; (2) is under the direct control of the school as to the use and maintenance of education records; and (3) does not redisclose any personally identifiable information from education records without prior parental consent. 34 C.F.R. §§ 99.30(a), 99.31(a)(1)(i). Further, a school must ensure those receiving records under this exception obtain access only to records in which they have legitimate educational interests. *Id*. § 99.31(a)(1)(ii).

### 1.     The doctrines of apparent authority and *in loco parentis* are inapplicable.

Google argues that "the consent that Google obtains from schools eliminates Counts I and II because it vitiates any reasonable expectation of privacy required for asserting constitutional privacy violations." Mot. at 8. Without explanation, Google cites two criminal cases and a case discussing the doctrine of *in loco parentis*. *Id*. at 9. None of these cases support its argument.

***First***, the criminal cases Google cites apply the "apparent authority doctrine," under which a warrantless "search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Davis*, 332 F.3d 1163, 1170 (9th Cir. 2003). But Google cites no authority supporting application of this criminal-law doctrine to civil cases. While civil law also recognizes an apparent-authority doctrine, it is different than the one found in criminal law and concerns agency relationships. The civil doctrine holds that a third party may *not* presume that a purported agent has authority to consent on behalf of a principal by the purported agent's statements alone; "rather, conduct by the principal is essential to create the agency." *Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074 (2022); *see also Shanahan v. IXL Learning, Inc*., No. 24-CV-02724-RFL, 2024 WL 4658276, at *4 (N.D. Cal. Nov. 1, 2024) ("IXL cannot rely on the school districts' apparent authority to consent on behalf of parents" without evidence that the parents' conduct supported such authority).

***Second***, Google fails to explain how the *in loco parentis* doctrine supports its argument. That doctrine contemplates a school's ability to maintain order on school grounds, including administration of student discipline—as Google's cited authority puts it, "we have acknowledged that for many purposes school authorities act *in loco parentis*, with the power and indeed the duty to inculcate the habits and manners of civility[.]" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995) (cleaned up). It arises in the context of tort liability against school officials for corrective measures taken against students on school property, such as a school's abridgement of student speech when necessary to protect students from harm. *See Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 684 (1986). Even then, the doctrine is applied only when "the children's actual parents cannot protect, guide, and discipline

them." *Mahanoy Area Sch. Dist. v. B.L.*, 1594 U.S. 180, 189 (2021). And this pseudo-paternal conduct is always subject to constitutional limitations. *See, e.g., Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 368 (2009). In other words, nothing in our *in loco parentis* jurisprudence grants schools unfettered authority to consent to the generation, harvesting, use, and disclosure of students' personal data by technology companies—without informing parents, obtaining their consent, or respecting their objections—in order to ease purported burdens associated with obtaining their consent.

### 2.    The party exception does not foreclose Plaintiffs' federal wiretap claim.

Google invokes the so-called "party exception" to the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d) ("FWA"), arguing that third-party operators "would have necessarily consented to Google's collection of" student data. Mot. at 9. Its argument fails for at least two reasons.

***First***, third-party consent is a fact-intensive question that is generally not resolvable at this stage. *See Meta Pixel Tax Filing*, 724 F.Supp.3d 987, 1004 (rejecting similar argument by Meta); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (same); *Brown*, 685 F. Supp. 3d at 933 (finding that Google failed to prove consent as a matter of law); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (same).

***Second***, Google ignores that this exception does not apply to actions that are criminal or tortious, and Plaintiffs allege that Google intercepted Plaintiffs' communications for the benefit of Google and third parties in violation of state and federal law, as described throughout the Complaint. *See, e.g.*, ¶¶ 80, 86, 250–255, 406, 433–34, 439, 448; *see also Q.J., et al., v. PowerSchool, et al.*, 2025 WL 2410472, *6 (N.D. Ill. Aug. 20, 2025) (rejecting similar argument by PowerSchool); *LiveRamp*, 2025 WL 2021802, at *9 (rejecting argument that defendant's profit motive defeated the crime-tort exception).

### D.    Plaintiffs meet the heightened fraud pleading standard where required.

Google argues that the Complaint fails to allege facts sufficient to support Plaintiffs' UCL

claim, which is based, in part, on Google's fraudulent conduct.[12] Mot. at 10. Specifically, Google argues that Plaintiffs do not meet the fraud prong because they fail to allege reliance. Mot at 10. In support, Google cites *Cherkin,* 2025 WL 844378, at *5, but *Cherkin* is inapposite on that point: it addressed plaintiffs' deceit claim, not their UCL fraud claim, which is governed by a different reliance standard. To plead UCL fraud, a "plaintiff need not show that he or others were actually deceived [] by the conduct [] in question." *Khan v. CitiMortgage, Inc*., 975 F. Supp. 2d 1127, 1145 (E.D. Cal. 2013) (cleaned up). Instead, a plaintiff must show either that the public was or likely was deceived, or harm to the public interest. *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). Plaintiffs plausibly allege that Google's misrepresentations were likely to deceive the public and harm the public interest. ¶ 229; *see also* ¶¶ 202–226.

Furthermore, Plaintiffs allege indirect reliance through their schools.[13] ¶ 194; *see Hasso v. Hapke*, 227 Cal. App. 4th 107, 128 (2014) (collecting cases). They allege that Google makes several false or misleading statements in its privacy policies on which it intends or should expect that schools will rely in believing that Google may collect student data with only school consent. For example, Google falsely claims that it is a "school official" under FERPA and that it uses student data in compliance with FERPA, leading schools to believe they may provide Google access to student data without first obtaining parental consent. ¶¶ 213–217. Further, Google falsely advises schools that they are authorized to consent on behalf of children under COPPA. ¶ 221.

Indeed, if schools purportedly consented to Google's data collection on behalf of students, as Google now argues, their consent would permit an inference that they relied on Google's false

---

[12] Google expresses confusion as to which claims are subject to Rule 9's pleading standard. To clarify, it is only Plaintiffs' UCL claim, as that is the only claim arising from their allegations regarding Google's false statements. ¶ 428; *Margolis v. Apple Inc*., 743 F. Supp. 3d 1124, 1136–37 (N.D. Cal. 2024) (applying Rule 9 only to plaintiffs' UCL claim predicated on fraud and not their CDAFA claim, which was predicated on knowing unauthorized access).

[13] Plaintiffs do not contend or concede that their schools were their actual or apparent agents authorized to consent to Google's Terms on their behalf, but applicable law does not require a finding of agency under the indirect-reliance doctrine. *See* Restatement (Second) of Torts § 533 (describing doctrine); *Grinnell v. Charles Pfizer & Co*., 274 Cal. App. 2d 424, 441 (Ct. App. 1969) (doctor who gave patient vaccine acted as patient's "agent" in relying on information from drug manufacturer); *Toole v. Richardson-Merrell Inc*., 251 Cal. App. 2d 689, 707 (Ct. App. 1967) (same).

1    representations that they were authorized to do so. *See Occidental Land, Inc. v. Superior Ct.*, 18 Cal.

2    3d 355, 363 (1976) ("[A]n inference of reliance arises if a material false representation was made to

3    persons whose acts thereafter were consistent with reliance upon the representation.").

4    **E.    Plaintiffs' claims do not fail for independent reasons.**

5          **1.    Plaintiffs state claims under 42 U.S.C. § 1983.**

6          Plaintiffs allege that Google is a state actor and has violated their constitutional rights.

7                **a.    Google is a state actor for purposes of its student-data practices.**

8          To establish a claim under 42 U.S.C. § 1983, Plaintiffs must show that Google deprived them

9    of a constitutional right while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

10   A complaint may be dismissed only if it is devoid of allegations that give rise to a plausible inference

11   of state action. *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015). State action exists "if there is such

12   a close nexus between the State and the challenged action that seemingly private behavior may be

13   fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531

14   U.S. 288, 295 (2001) (cleaned up). There are four tests for identifying state action: public function,

15   joint action, governmental coercion, and governmental nexus or "entwinement." *Rawson v. Recovery

16   Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020); *Brentwood*, 531 U.S. at 296 (equating

17   "entwinement" and "governmental nexus"). Whether these tests are "actually different in operation

18   or simply different ways of characterizing the necessarily fact-bound inquiry" remains unresolved.

19   *Rawson*, 975 F.3d at 747 (cleaned up). "At bottom, the inquiry is always whether the defendant has

20   exercised power possessed by virtue of state law and made possible only because the wrongdoer is

21   clothed with the authority of state law." *Id*. at 748 (cleaned up).

22         ***Google performs a public function.*** The public-function test is satisfied on a showing that the

23   function at issue is both traditionally and exclusively governmental. *Kirtley v. Rainey*, 326 F.3d 1088,

24   1093 (9th Cir. 2003). Plaintiffs allege that Google performs a public function in providing education

25   services to public schools: WFE Core Services provides a comprehensive suite of tools that facilitate

26   a wide range of essential school functions that has become "the *de facto* platform" for K–12 education

27

28

through which students access course materials; complete assignments; search for information; store their files; manage their schedules; and communicate with their teachers and peers. ¶¶ 38, 47, 51, 68, 155. Absent those functions, school ceases to be recognizable as school. Accordingly, students' use of Google's services is mandatory. ¶ 157. As Google itself states, students' inability to use its products "will impact the education experience," including limiting children's ability to "complete assignments or collaborate with peers[.]" ¶ 159. By performing those functions, Google is a state actor as to them. *See West*, 487 U.S. at 56 (finding state action where "[t]he State bore an affirmative obligation to provide adequate medical care to [plaintiff]; the State delegated that function to [defendant]; and [defendant] voluntarily assumed that obligation by contract").

Google relies on *Caviness v. Horizon Community Learning Center, Inc.*, but that case supports Plaintiffs' position, not Google's. Mot. at 11 (citing 590 F.3d 806 (9th Cir. 2010)). There, a fired teacher brought Section 1983 claims against his employer, a private charter school, alleging it defamed him and violated his constitutional rights. *Id.* at 813. The teacher argued that charter schools are state actors for all purposes, including for matters involving employment disputes. *Id.* The court disagreed, holding only that charter schools are not state actors *as a matter of law*, while observing that they may be in certain contexts. *Id.* at 815; s*ee also Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982) (defendant was not a state actor as to employment dispute).[14] Google suggests that, under *Caviness*, a private education-services provider can never be a state actor. Mot. at 11. But *Caviness* does not support this bright-line rule and in fact urges the opposite: "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Caviness*, 590 F.3d at 812. Under *Caviness*, therefore, Google *is* a state actor for purposes of providing schools WFE Core Services and managing student information, which is the focus of the Complaint.

***Google acts jointly, and is entwined, with public schools.*** The joint-action test asks whether the state is "so far insinuated into a position of interdependence with the private party that it was a

---

[14] Numerous courts have found state action by charter schools where the challenged conduct pertained to their provision of education services rather than employment matters. *See, e.g., Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 209 n.24 (E.D.N.Y. 2018) (collecting cases).

joint participant in the enterprise." *Rawson*, 975 F.3d at 748. The entwinement test is met when "a sufficiently close nexus between the state and private actor [exists] so that the action of the latter may be fairly treated as that of the State itself[.]" *Id.*[15] While the question of whether a private company can be a state actor when providing public-school services appears to be one of first impression in this Circuit, at least one court has held that it can. *Brannum v. Overton Cnty. Sch. Bd.*, 2006 WL 8445313 (M.D. Tenn. June 20, 2006) (edtech company was a state actor where it worked closely with school to install security cameras throughout campus), *aff'd in part, rev'd in part on other grounds*, 516 F.3d 489 (6th Cir. 2008). Plaintiffs allege that Google works closely with schools in collecting and using student data. For example, Google purports to shift to schools the responsibility of obtaining parent consent, ¶¶ 108, 131; it redirects parent inquiries to schools, ¶¶ 110–113; and it claims that all student data is managed by schools, not Google, ¶ 115. When parents request their children's data, Google and schools point to each other. ¶¶ 117–119. However, Google's sprawling, complex Terms show that Google retains considerable control over student data, as do schools' statements regarding their lack of control over student data, as Plaintiffs allege. ¶¶ 117–18. Thus, Google's and schools' control of student information is effectively inseparable.

Google also asserts that it is authorized to collect student data as a "school official" under FERPA, thereby admitting that it acts as a school employee and is subject to the school's control. ¶¶ 145, 213; 34 C.F.R. § 99.31(a)(1)(A). Likewise, Google contends that COPPA permits it to shift its legal obligations to schools. ¶¶ 131, 221. Even Google's own Motion supports a finding of state action. *See Am. Title. Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir. 1988) (courts may consider statements in a brief as admissions). In it, Google explains the key role that schools play in determining what student data is collected by Google and shared with third parties. Mot. at 16. However, as discussed at section A.1.a., *supra*, the Terms that govern Google's collection and use of student data alone span hundreds of pages and demonstrate that Google exercises considerable control over student data independent of schools.

---

[15] Given the similarity of the allegations supporting state action under these tests, Plaintiffs present them together for brevity.

Further, Google invokes laws and doctrines that govern only schools—like FERPA, analogous California law, and *in loco parentis*—in defense of its own conduct. *Id*. at 4, 9, 21. Google argues that its purported status as a "school official" under FERPA does not render it a state actor for purposes of its data practices, *id*. at 12, while elsewhere arguing that FERPA authorizes those practices, *id*. at 4, 21. In other words, Google claims to be a "school official" under state and federal law to acquire the student data central to its business, but denies acting "under color of law" to avoid liability. Google cannot reap the benefits of being a state actor while shirking the burdens.

In sum, the Complaint is not devoid of allegations permitting an inference that Google has so entwined itself with schools that it "ought to be charged with a public character and judged by constitutional standards." *Brentwood*, 531 U.S. at 295. At the pleading stage, Plaintiffs' allegations support a finding of state action in this "necessarily fact-bound inquiry." *Rawson*, 975 F.3d at 747.

### b. Plaintiffs allege constitutional violations.

Plaintiffs adequately allege violations of their Fourth and Fourteenth Amendment rights.

*Fourth Amendment*. Google argues that "Plaintiffs cannot reasonably expect that their activities on Google-operated online services would be private from Google, given that such services must necessarily share data with Google to function and given Google's disclosures about its data practices." Mot. at 13. But it fails to demonstrate, as a matter of law, that children or their parents understand how Google's products work, nor does Google provide them its terms and policies, relying—as Google admits—on school consent alone. ¶ 11; Mot. at 7–8; *see Rigianian v. LiveRamp Holdings, Inc*., 2025 WL 2021802, *6 (N.D. Cal. July 18, 2025) (plaintiffs allege they "were not aware of LiveRamp's conduct at all, [] so LiveRamp's disclosures have no effect on their reasonable expectations of privacy"). Further, children do have an expectation of privacy in their personal information, including in their education records, not least as codified by FERPA and analogous state law. *See Cherkin*, 2025 WL 844378, at *2.

*Fourteenth Amendment.* Google contends that the data at issue is not "highly sensitive" personal information. Mot. at 13. But the types of data Google collects—and the fact that it concerns

children—can only be described as highly sensitive. As in *Cherkin*, Plaintiffs allege that Google misappropriates "sensitive information about students, including their identities, academics, health, behavior, and web-browsing habits, in which students have an objectively reasonable expectation of privacy." 2025 WL 844378, at *2. Elsewhere, Google has warned about "[t]he civil liberties and human rights concerns associated with" access to such "sensitive" information. ¶¶ 14, 72–73.

Google further argues that Plaintiffs have not alleged public disclosure of their personal information. Mot. at 13. But public disclosure is not a prerequisite to Plaintiffs' claim; rather, determining a violation requires a balancing of factors—including any safeguards against public disclosure—which is a fact-intensive inquiry that may not be resolved at the pleadings stage. *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004).

### 2.     Plaintiffs state a claim under both FWA and CIPA.

Google argues that Plaintiffs' claims under the FWA and California Invasion of Privacy Act ("CIPA") fail because Plaintiffs do not allege that Google intercepted (1) confidential (2) communications (3) in transit, (4) which it relayed to third parties. Mot. at 13–17. Not so. As described in section A.1.b., *supra*, Plaintiffs allege that Google employs browser-fingerprinting technology across its Products, including when Plaintiffs browse the internet using Chrome, enabling Google to automatically collect extensive information about them. ¶¶ 58–61. Accordingly, Plaintiffs allege that Google intercepted "content" including "detailed URL requests, webpage browsing histories, search queries, and other information that Plaintiffs and the Class members sent to those websites and for which Plaintiffs received communications in return from those websites." ¶ 392. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) (details of URL requests can qualify as "content" under FWA).

Plaintiffs further allege that "Google maintains a robust, open Application Programming Interface ('API') program," through which it grants access to student data to numerous companies in

real time.[16] ¶¶ 190, 191, 194. Plaintiffs allege that such information includes, but is not limited to, students' full names, courses, coursework, submissions, classroom-assigned unique identifier, when coursework is begun, whether coursework is submitted late, individual grades, grade history, responses, guardian information, and associated metadata. ¶ 192. *D'Angelo Av. FCA US, LLC*, 2024 WL 1625771, at \*9–14 (S.D. Cal. Mar. 28, 2024) (permitting CIPA claim based on similar allegations); *Meta Pixel Tax Filing*, 724 F.Supp.3d at 1004 (finding plaintiffs' general descriptions of data intercepted sufficed and that they need not "plead the specific" and "sensitive contents" of communications intercepted). For the reasons set forth in section A.1.a., *supra*, Google's own statements about how it shares data through its API program support allegations that Google shares Plaintiffs' data in the manner it describes. And, as explained in section E.1.b, *supra*, in providing information to their schools, Plaintiffs had a reasonable expectation that their communications would not be intercepted by Google or further disclosed to third parties, including other technology vendors such as those listed in the Complaint. ¶ 193. Technical details of interception need not be pleaded and are "better left for summary judgment." *LiveRamp*, 2025 WL 2021802, at \*11.

Google also contends that Plaintiffs fail to allege third-party involvement, arguing that "their schools necessarily would have authorized [] third-party apps by integrating them with GWFE." Mot. at 16. But, as discussed in sections B. and C., *supra*, schools do not have authority to provide consent in place of children's parents. Further, Google's cited cases are inapposite, as they do not involve (1) children (2) in compulsory-education environments (3) whose personal information was taken through their use of mandatory school-provided services (4) and shared with third parties (5) to which neither children nor their parents consented—facts that are each critical to analysis of Plaintiffs' claims. *Cf. Cherkin*, 2025 WL 844378, at \*5 (similar allegations stated CIPA claim).

### 3.    Plaintiffs state a claim under CDAFA.

Google argues that Plaintiffs' claim under the California Comprehensive Computer Data

---

[16] Google notes that Plaintiffs do not allege that they used products by the named companies identified in the Complaint, but Plaintiffs do not allege that Google shares student data with only companies who make products used by Plaintiffs. Rather, they allege that Google shares student data with a host of entities irrespective of whether those entities directly interact with Plaintiffs. ¶¶ 190–197.

Access and Fraud Act ("CDAFA") is subject to the heightened pleading requirements of Rule 9. Mot. at 17. Contrary to Google's contention, however, just because the statute contains the word "fraud" does not mean that every CDAFA claim is subject to Rule 9, and Plaintiffs' claim is not predicated on fraud. *Compare* ¶¶ 414–416 (CDAFA claim alleges knowing unauthorized access, not fraud), *with* ¶ 428 (UCL claim alleges fraudulent conduct); *see also Margolis*, 743 F. Supp. 3d at 1136–37 (applying Rule 9 only to plaintiffs' UCL claims predicated on fraud and not their CDAFA claim, which was predicated on knowing unauthorized access). Further, even if Plaintiffs' allegations were subject to heightened requirements, they would suffice as discussed in section D., *supra*.

Google next argues that CDAFA's "without permission" element requires a showing that Google overcame technical or code-based barriers. Mot. at 17. But the Ninth Circuit has rejected that argument. *See Cherkin*, 2025 WL 844378, at *6 (rejecting overcoming technical barriers as an element of CDAFA claim) (citing *United States v. Christensen*, 828 F.3d 763, 789–90 (9th Cir. 2015)).

Google further argues that Plaintiffs have failed to allege damage or loss because privacy violations do not suffice. Mot. at 18. This argument fails for at least three reasons.

**First**, "the plain language of CDAFA's 'damage or loss' requirement contains no such limitation," as the purpose of the statute is to protect the privacy of individuals. *Cherkin*, 2025 WL 844378, at *6 (retaining similar CDAFA claim on basis of statutory language and purpose) (citing *Frasco v. Flo Health, Inc*., 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024)).

**Second**, Plaintiffs allege damage by not having received a share of the allegedly unjust profits generated from their data under a disgorgement theory. ¶ 300; *Demetrius Smith, et al. v. Rack Room Shoes, Inc*., 2025 WL 2210002, *3 (N.D. Cal. Aug. 4, 2025); *Rodriguez*, 772 F. Supp. 3d at 1109.

**Third**, Plaintiffs allegedly suffered economic loss because there is a market for their data, and they were not compensated, Google's use of their data diminished its value, or both. ¶¶ 35–37, 232, 285, 325; *see Rodriguez*, 772 F. Supp. 3d at 1110; *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 600 (9th Cir. 2020) (stake in unjustly earned profits exists no matter individual's intent to sell or diminution data's value); *Brown*, 685 F. Supp. 3d at 940 (evidence of market for plaintiffs

data precludes ruling as a matter of law that plaintiffs suffered no damages under CDAFA).

      **4.**      **Plaintiffs have standing to bring their UCL claim.**

      Google argues that Plaintiffs lack standing to bring a UCL claim because they fail to allege lost money or property. Mot. at 18. Courts are split as to whether the economic-injury requirement is satisfied only if the plaintiff loses money or property, or whether allegations of data misappropriation will suffice, and there is no binding Ninth Circuit precedent. *See A.B. ex rel v. Google LLC*, 737 F. Supp. 3d 869, 881 (N.D. Cal. 2024). Google correctly observes that the *Cherkin* court required a loss of property beyond what Plaintiffs had alleged and dismissed their UCL claim. 2025 WL 844378, at *5. But other courts have concluded that allegations of loss of personal information through misappropriation does confer standing under the UCL, including courts in this District. *See, e.g., GoodRX Holdings,* 2025 WL 2052302, at *12 (finding UCL standing where plaintiffs alleged that defendant "took their data without compensating them for it and that the data has value to both companies and consumers."); *Owens v. Smith, Gambrell & Russell Int'l*, LLP, 2024 WL 3914663, *14 (C.D. Cal. May 30, 2024) ("Plaintiffs' allegation that the value of their personal information has diminished is also sufficient to state an injury."); *Calhoun*, 526 F. Supp. 3d at 636 ("[T]he Ninth Circuit and a number of district courts [] have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *A.B.*, 737 F. Supp. 3d at 881 ("'Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL.'") (quoting *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024)); *Brown v. Google LLC*, 2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021) (same). Under this line of authority, Plaintiffs have standing to bring a UCL claim.

      Google also argues that Plaintiffs' claim fails because they fail to allege that they have an inadequate remedy at law. Mot. at 18. But many "courts in this district [] find no bar to the pursuit of alternative remedies at the pleadings stage[.]" *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 976–77 (N.D. Cal. 2022) (collecting cases). Further, the adequacy of remedies requires fact-intensive analysis and should not be resolved at this stage, especially in light of Plaintiffs' allegations that

Google "irreparably damage[s] school-aged children by violating their privacy and their right to control their own personal information" and "forever" compromises it. ¶¶ 231, 239, 255.

Google further contends that Plaintiffs do not meet the unlawful prong of the UCL because their allegations are derivative of their other claims, which purportedly fail. Mot. at 19. But because Plaintiffs' other claims do not fail, Plaintiffs state a claim under the unlawful prong. *See GoodRX Holdings,* 2025 WL 2052302, at *12. Further, Google's argument regarding fraud is refuted at section D., *supra*, and its argument as to unfairness is soundly refuted by allegations throughout the Complaint. *See, e.g.*, ¶¶ 34, 159, 273, 299–301, 425, 426.

### 5. Plaintiffs state common-law privacy claims.

Google argues that Plaintiffs do not plead facts supporting an inference that their information was widely published. Mot. at 20. But Plaintiffs allege that Google provides student data to thousands of companies in real time, based on Google's own admissions. ¶¶ 190, 191, 194. Those allegations permit an inference that Google publicly discloses students' information. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. at 947 (finding Google published plaintiffs' private information by selling it to hundreds of companies in the real-time-bidding process). Plaintiffs have an expectation of privacy in that information as discussed in section E.1.b., *supra*. And Google's sweeping collection and commercial exploitation of children's personal information is highly offensive under the circumstances. As the *Cherkin* court concluded, "[d]oing so without parental notice or consent, as is alleged, plausibly describes conduct that is highly offensive to a reasonable person and constitutes an egregious breach of the social norms." 2025 WL 844378, at *3 (cleaned up); *see also GoodRX Holdings,* 2025 WL 2052302, at *12 (offensiveness "cannot be resolved at the pleading stage").

### 6. Plaintiffs state an unjust-enrichment claim.

Google argues that Plaintiffs' unjust-enrichment claim fails because unjust enrichment is not a standalone claim. Mot. at 22. But "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "To allege unjust enrichment as an independent cause of action, a plaintiff must

show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id*.

Google argues that Plaintiffs "do not show that any benefits were retained at their expense." Mot. at 22. But that is precisely what Plaintiffs allege: that "Google has derived profits and other tangible benefits from its collection of Stolen Information, without which Google could not as effectively have grown its business, acquired numerous other tangible and intangible assets, developed other products, supported myriad data-sharing agreements, and, as of the date of this filing, stand at a more than $1.8 trillion valuation." ¶ 458. These allegations support an unjust-enrichment claim. *See Cherkin*, 2025 WL 844378, *7 (upholding unjust-enrichment claim on similar allegations); *GoodRX Holdings,* 2025 WL 2052302, at *13 (same); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1008 (same); *see also LiveRamp*, 2025 WL 2021802, at *13 ("Because the FAC contains detailed factual allegations as to how LiveRamp has violated Plaintiffs' privacy rights to create a 'surveillance ecosystem' at the heart of its revenue generation without their consent, Plaintiffs have sufficiently stated a claim for unjust enrichment.").

Google argues that Plaintiffs fail to allege an inadequate remedy. Mot. at 22. But, unlike Plaintiffs' legal claims, a claim for unjust enrichment "emphasizes the wrongdoer's enrichment, not the victim's loss." *Softketeers, Inc. v. Regal W. Corp*., 2023 WL 2024701, *6 (C.D. Cal. Feb. 7, 2023) (cleaned up). "It can include remedies such as disgorgement of profits, which would not 'involve the restoration of anything the claimant previously possessed.'" *Id*. (cleaned up). "This theory does not hinge on whether or not plaintiff has been harmed or otherwise suffered a loss as a result of defendant's conduct." *Minx Int'l, Inc. v. M.R.R. Fabric*, 2015 WL 12645752, at *5 (C.D. Cal. Feb. 11, 2015). It requires only that the defendant inured some benefit from the plaintiff that would be unjust for the defendant to retain. *Id*. Thus, even if Plaintiffs had not alleged that Google damaged them financially, they could still seek disgorgement of Google's profits under an unjust-enrichment theory—or compel disgorgement over and above their own financial damage. *See id*. Because Plaintiffs' legal claims do not afford such relief, such remedies are inadequate.

1

## CONCLUSION

2      Plaintiffs respectfully request that the Court deny Google's Motion in its entirety. To the extent

3  necessary, however, Plaintiffs request leave to amend the Complaint.

4  Dated: August 28, 2025                      Respectfully submitted,

5                                              By: /s/ Rebecca A. Peterson

6  Julie U. Liddell (*pro hac vice*)           Rebecca A. Peterson (241858)
   julie.liddell@edtech.law                    RPeterson@4-justice.com
7  W. Andrew Liddell (*pro hac vice* forthcoming)   GEORGE FELDMAN MCDONALD, PLLC
   andrew.liddell@edtech.law                   1650 West 82nd Street, Suite 880
8  EDTECH LAW CENTER PLLC                       Bloomington, MN 55431
   P.O. Box 300488                             Tel.: (612) 778-9595
9  Austin, Texas 78705                         Fax: (888) 421-4173
10 Tel.: (737) 351-5855

11 Daniel E. Gustafson (*pro hac vice* forthcoming)   Lori G. Feldman (*pro hac vice*
   dgustafson@gustafsongluek.com               forthcoming)
12 Catherine Sung-Yun Smith (*pro hac vice*)   LFeldman@4-justice.com
   csmith@gustafsongluek.com                   Michael Liskow (SBN 243899)
13 Shashi K. Gowda (*pro hac vice*)            MLiskow@4-Justice.com
   sgowda@gustafsongluek.com                   GEORGE FELDMAN MCDONALD, PLLC
14 GUSTAFSON GLUEK, PLLC                        745 Fifth Avenue, Suite 500
   Canadian Pacific Plaza                      New York, NY 10151
15 120 South 6th Street, Suite 2600            Tel.: (718) 878-6433
16 Minneapolis, MN 55402                       Fax: (888) 421-4173
   Tel.: (612) 333-8844
17 Fax: (612) 339-6622

18

19 *Counsel for Plaintiffs and the Proposed Class*

20

21

22

23

24

25

26

27

28