**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*Pro Hac Vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL SCHWARZ, on behalf of his minor child B.S., EMILY DUNBAR, on behalf of her minor child H.D., and MICHAEL GRIDLEY and ELIZABETH GRIDLEY, on behalf of their minor children A.G. and Z.G., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 3:25-cv-03125-RS <br><br> **GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT** <br><br> Date:      October 16, 2025 <br> Time:      1:30 p.m. <br> Location: Courtroom 3, 17th Floor <br> Judge:    Hon. Richard Seeborg |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

      A.    Dismissal is appropriate under Rule 8. ................................................................ 1

      B.    Plaintiffs' state law claims are preempted by COPPA. ....................................... 3

            1.    Plaintiffs' state law claims are inconsistent with COPPA. ........................ 3

            2.    Plaintiffs' attempts to evade the FTC's well-established guidance fail. ..... 5

      C.    Plaintiffs' claims each fail for independent reasons. .......................................... 6

            1.    Counts I & II fail for lack of a constitutional violation by Google. ............. 6

            2.    Counts III & IV fail due to unsatisfied FWA and CIPA elements. ............. 9

            3.    Count V does not sufficiently plead various CDAFA elements. ............... 12

            4.    Count VI fails for lack of UCL standing and on the merits. ..................... 12

            5.    Counts VII & VIII lack the factual basis for common law claims ............ 14

            6.    Count IX fails because Plaintiffs have no valid quasi-contract claim. ...... 15

III.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*All. for Cmty. Media v. F.C.C.*,
    529 F.3d 763 (6th Cir. 2008)........................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................................6

*Brannum v. Overton Cnty. Sch. Bd.*,
    No. 2:03-0065, 2006 WL 8445313 (M.D. Tenn. June 20, 2006) ................................................7

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010)........................................................................................................7

*Cherkin v. PowerSchool Holdings, Inc.*,
    No. 24-CV-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025)............................... passim

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) ..................................................................................11, 14

*Doe v. Bonta*,
    101 F.4th 633 (9th Cir. 2024) ......................................................................................................9

*Doe v. GoodRx Holdings, Inc.*,
    No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ...................................15

*Goulart v. Cape Cod Healthcare, Inc.*,
    No. 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025)...........................................11

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................................................10

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989)....................................................................................................10

*Hernandez-Silva v. Instructure, Inc.*,
    No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)................ passim

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................................................................12

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................................................2, 14

*In re Google, Inc. Priv. Pol'y Litig.*,
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........................................14

*In re Meta Pixel Tax Filing*
 724 F. Supp. 3d 987 (N.D. Cal. 2024)) ...................................................................15

*In re Tobacco II Cases,*
 46 Cal. 4th 298 (2009) .............................................................................................13

*In re Zynga Priv. Litig.*,
 750 F.3d 1098 (9th Cir. 2014).................................................................................10

*Johnson v. Trumpet Behavioral Health, LLC*,
 No. 3:21-cv-03221-WHO, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022)......................13

*Jones v. Tonal Sys., Inc.*,
 751 F. Supp. 3d 1025 (S.D. Cal. 2024) ...................................................................10

*Katz-Lacabe v. Oracle Am., Inc.*,
 668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................................................11

*M. K. v. Google LLC*,
 No. 21-CV-08465-VKD, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .....................5

*New Mexico ex rel. Balderas v. Google, LLC*,
 489 F. Supp. 3d 1254 (D.N.M. 2020) ........................................................................5

*NovelPoster v. Javitch Canfield Grp.*,
 140 F. Supp. 3d 938 (N.D. Cal. 2014) .......................................................................9

*O'Handley v. Weber*,
 62 F.4th 1145 (9th Cir. 2023) ....................................................................................7

*Patrick v. Success Acad. Charter Sch., Inc.*,
 354 F. Supp. 3d 185 (E.D.N.Y. 2018) .......................................................................7

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
 51 F.4th 1125 (9th Cir. 2022) ..................................................................................11

*Porras v. StubHub, Inc.*,
 No. C 12-1225 MMC, 2013 WL 144045 (N.D. Cal. Jan. 11, 2013) ........................13

*Pryor v. City of Clearlake*,
 877 F. Supp. 2d 929 (N.D. Cal. 2012) .......................................................................8

*Q.J. v. PowerSchool Holdings, LLC*,
 No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025)............................7, 11

*Rendell-Baker v. Kohn*,
 457 U.S. 830 (1982).................................................................................................7

*Riganian v. LiveRamp Holdings, Inc.*,
 No. 25-CV-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ................9, 11

*Rogers v. Roseville SH, LLC,*
    75 Cal. App. 5th 1065 (2022) ..............................................................................9

*San Mateo Union High Sch. Dist. v. Educ. Testing Servs.,*
    No. C 13-3660 SBA, 2013 WL 4711611 (N.D. Cal. Aug. 30, 2013) .........................8

*Santa Cruz Homeless Union v. Bernal,*
    514 F. Supp. 3d 1136 n.6 (N.D. Cal. 2021) ..........................................................5

*Shanahan v. IXL Learning, Inc.,*
    No. 24-6985 (9th Cir.)...................................................................................6, 9

*Smith v. NVR, Inc.,*
    No. 17 C 8328, 2018 WL 6335051 (N.D. Ill. Dec. 5, 2018) ....................................6

*Tovar v. City of San Jose,*
    No. 5:21-CV-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021).........7, 10, 13

*Turner v. Porsche Cars N. Am., Inc.,*
    No. CV 23-06465-MWF, 2023 WL 8788754 (C.D. Cal. Dec. 19, 2023)...................12

*United States v. Christensen,*
    828 F.3d 763 (9th Cir. 2015)...........................................................................12

*United States v. Heckenkamp,*
    482 F.3d 1142 (9th Cir. 2007).............................................................................8

*Vance v. Google LLC,*
    No. 20-CV-04696-BLF, 2024 WL 5011611 (N.D. Cal. Dec. 5, 2024) ...................15

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)..........................................................................13

**STATUTES**

15 U.S.C. § 6501 .............................................................................................3, 5

15 U.S.C. § 6502 .................................................................................................3

18 U.S.C. § 2511 ...............................................................................................11

Cal. Penal Code § 502 .......................................................................................12

CIPA § 631.......................................................................................................10

CIPA § 632.......................................................................................................10

**REGULATIONS**

16 C.F.R. § 312.2 .................................................................................................................3

16 C.F.R. § 312.3 .................................................................................................................3

# I.    INTRODUCTION

Plaintiffs' Opposition only underscores the deficiencies identified in Google's Motion to Dismiss ("Mot."). Plaintiffs concede that they provide no details about their own experiences with Google's products—a fatal omission under Rule 8, which requires them to show that *they* are entitled to relief. Plaintiffs wrongly suggest they can exclusively rely on Google's published materials to support their claims, but those merely describe categories of information that *might* be collected depending on the circumstances. To support their fact-intensive common law and highly technical statutory claims, Plaintiffs must plausibly allege that specific qualifying information was collected from them, which even they do not dispute they have failed to do. Plaintiffs' Complaint leaves Google guessing as to what, exactly, Plaintiffs contend it did wrong, and it should be dismissed under Rule 8.

Dismissal is also warranted because Plaintiffs' state law claims are squarely preempted by COPPA, and Plaintiffs' individual claims each fail for independent reasons.

# II.    ARGUMENT

## A.    Dismissal is appropriate under Rule 8.

Plaintiffs' Complaint does not provide a "short and plain statement of the claim[s] showing that the pleader is entitled to relief" because it does not provide even the most basic details about their experiences with the Google products at issue. Plaintiffs do not specify whether they used any, some, or all of the 20+ GWFE applications identified as part of the Core Services. *See* Compl. ¶ 51. They do not say what information they provided through such use. They do not say whether they or their schools used any third-party integrations. They do not say whether they conducted internet searches, and if so, whether they were logged into their accounts at the time, or what search engine or browser they supposedly used. And despite their discussion of a "forensic analysis" in their Opposition, Opp. at 4-5, the Complaint never once uses that phrase or describes the results of any such analysis.

Surprisingly, Plaintiffs do not even attempt to argue that they have alleged sufficient facts regarding their own use of Google's products. Rather, they insist that they do not have to because they can instead rely exclusively on Google's public terms and policies. Opp. at 2–3. But these

materials describe what information *might* be collected depending on what specific product or feature is used and how. It is impossible to know what information *was* collected from a given student without knowing, for example, whether they used Google Calendar to schedule classes, Google Docs to draft essays, or Google Sheets to complete math assignments. And those details matter when it comes to the specific, often technical, claims asserted by Plaintiffs.

These same deficiencies recently led Judge Blumenfeld to correctly dismiss a similarly diffuse complaint filed by Plaintiffs' counsel in *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025), *appeal filed*, 25-5438 (9th Cir. Aug. 25, 2025). As here, the *Hernandez-Silva* complaint "largely consist[ed] of broad, generalized allegations about [d]efendant's full product line, while offering scant detail about [p]laintiffs' own experiences with any of them." *Id.* at *2. Those plaintiffs, too, failed to allege which of the software programs they used or "what information . . . was collected from any plaintiff or to whom it was allegedly disclosed." *Id.* Such omissions are inexcusable when, as here, "at least some of the information about the products [they] used and the type of information they submitted is within their knowledge." *Id.* at *3. Indeed, Plaintiffs acknowledge that at least one parent had "access to certain data collected from his child," Compl. ¶ 119, yet that data is never identified.

*Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025), proves Google's point because that complaint provided the very details about the named plaintiffs' experiences that are missing here. It identified the platforms used by the plaintiffs and the specific information collected from them—including "essays on political and controversial topics, confidential and sensitive letters about school staff, and voice recordings of a personal nature." *See* Class Action Complaint ¶¶ 376, 380, *Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706-JD (N.D. Cal. May 6, 2025), ECF No. 1 (hereinafter, "*Cherkin* Complaint"). It even included screenshots from a named plaintiff's dashboard. *Id.* ¶¶ 201–09. Plaintiffs include no such detail here, making this case easily distinguishable from *Cherkin* and other cases cited in the Opposition. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797,

823–22 (N.D. Cal. 2020) (complaint deemed sufficient where it identified the specific service and devices used and specific information allegedly disclosed).

Plaintiffs' utter failure to satisfy Rule 8, alone, justifies dismissal.

**B.     Plaintiffs' state law claims are preempted by COPPA.**

Plaintiffs do not dispute that COPPA governs the conduct at issue, thus the first element of the preemption test is satisfied. *See* Opp. at 9–11. The only remaining question is whether Plaintiffs' state law claims impose requirements inconsistent with COPPA's consent model, such that the second element is also satisfied. They do.

**1.     Plaintiffs' state law claims are inconsistent with COPPA.**

Plaintiffs' state law claims under CIPA, the CDAFA, the UCL, and California common law purport to require Google to obtain consent from parents, even when collecting children's personal information for the sole purpose of providing educational services in the school context. *See* Mot. at 7-9 (collecting relevant allegations). That is plainly inconsistent with the FTC's interpretation of COPPA.

COPPA requires "verifiable parental consent," which is a term of art defined as "**any reasonable effort** (taking into consideration available technology), **including a request for authorization** for future collection, use, and disclosure described in the notice, **to ensure that a parent of a child receives notice . . . and authorizes** the collection, use, and disclosure, as applicable, of personal information." 15 U.S.C. § 6501(9); 16 C.F.R. § 312.2 (emphasis added).

The FTC, which developed and twice revised the original COPPA Rule and has primary enforcement authority over COPPA, *see* 15 U.S.C. § 6502(b)(1)(A); 16 C.F.R. § 312.3, has consistently and unequivocally instructed that, when information is collected solely for educational purposes, schools "can consent under COPPA to the collection of kids' information on the parent's behalf." Second Declaration of Sunita Bali in Support of Google's Motion to Dismiss ("Second Bali Decl."), Ex. A. Plaintiffs challenge the FTC's FAQs as non-binding and nonpersuasive, *see* Opp. at 8-11, but the FAQs are not a one-off. The FTC has issued this same instruction *for years*:

- In 1999, the FTC advised in the preamble to its COPPA Rule that "the Rule does not preclude schools . . . from **serving as the parents' agent** in the [notice and consent] process." 64 FR 59888-01 (emphasis added).

- In 2015, the FTC recognized that "[m]any parents care deeply about their children's privacy, and rightly expect their schools to protect it," but cautioned that "COPPA was not intended to displace the traditional relationship between parents and schools when it comes to the collection of information exclusively for educational purposes in the school context and **with the school's permission**." Second Bali Decl. Ex. B.

- In 2020, the FTC issued additional guidance in the context of the ongoing COVID-19 pandemic, stating that "**schools can consent** on behalf of parents to the collection of student personal information . . . if such information is used for a school-authorized educational purpose," reemphasizing that ed tech services may "get consent from the school **instead of from the parent**." *Id.*, Ex. C (emphasis added).

- In 2022, the FTC said in a policy statement that "operators of ed tech that collect personal information **pursuant to school authorization** may use such information only to provide the requested online education service." *Id.*, Ex. D (emphasis added) (footnote omitted).

- In 2024, when the FTC was considering whether to move this oft-repeated guidance into its formal rule, it again explained the logic of school consent: "When a child goes to school, schools have the ability to act *in loco parentis* under certain circumstances. This is particularly the case when schools are selecting the means through which the schools and school districts can achieve their educational purposes, such as when deciding which educational technologies to use in their classrooms." 89 Fed. Reg. 2034-01.[1]

And this approach makes sense. First, it recognizes that it is manifestly *un*reasonable to require ed tech providers to obtain consent directly from parents because, unlike schools, they do not have a direct relationship with parents. Second, it recognizes that requiring consent from the parents of every student in a class is "likely to interfere with educators' curriculum decisions," such as when "some number of parents in a class decline to consent to their children's use of ed tech," which would force the school to either "forego[] particular services for the entire class or develop[] a separate mechanism for those students whose parents do not consent." 89 FR 2034-01 (explaining rationale for the FTC's long-standing guidance on school consent).

---

[1] The FTC's decision not to revise COPPA does not undermine the persuasiveness of its guidance on the status quo. Opp. at 10 n.9. For example, the FTC explained in 2024 that it was not a change in policy that led it to decline to adopt its proposed rule. Rather, it held off "[t]o avoid making amendments to the COPPA Rule that may conflict with potential amendments to [DOE's] FERPA regulations[.]" 90 Fed. Reg. 16918-01. The FTC also confirmed it would "continue to enforce COPPA in the ed tech context consistent with its existing guidance." *Id.*

In sum, the validity of school consent under COPPA has been "well detailed by the FTC." *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1261 (D.N.M. 2020). And the FTC has actively enforced COPPA against ed tech providers in a manner that reaffirms these principles. *See, e.g.*, Second Bali Decl., Ex. E ¶¶ 18, 24, 27 (FTC reiterating in complaint against ed tech company that the COPPA Rule "allows schools[] to serve as the parents' agents in the notice and consent process by consenting on *behalf of* parents") (emphasis in original).

### 2. Plaintiffs' attempts to evade the FTC's well-established guidance fail.

Plaintiffs respond by urging the Court to refrain from even *considering* the FTC's guidance. First, they seek to evade the FAQ on procedural grounds, suggesting that it requires a separate request for judicial notice. Opp. at 9. The FAQ is available on the FTC's official website, and the Court may "on its own motion . . . take[] judicial notice of" publicly available government guidance. *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1139 n. 4, 1141 n. 6 (N.D. Cal. 2021).[2] Second, they argue that the FAQ is of no relevance "for multitrillion-dollar businesses like Google." Opp. at 9 (cleaned up). But the FAQ is subtitled as "a guide for business *and* parents *and* small entity compliance," without reference to market cap. Second Bali Decl., Ex. A.[3] Third, they argue that the Court may not consider the guidance absent textual ambiguity in COPPA. Opp. at 10. Even assuming *arguendo* that the Court is so limited, COPPA's text incorporates the concept of "reasonable effort," 15 U.S.C. § 6501(9), which is an inherently ambiguous and contextual inquiry. *See, e.g.*, *All. for Cmty. Media v. F.C.C.*, 529 F.3d 763, 778 (6th Cir. 2008) (relying on FCC guidance given ambiguity introduced by a law's use of

---

[2] To avoid further dispute, Google has attached the FTC guidance cited in this brief to a second request for judicial notice being filed concurrently with this brief. *See also* ECF No. 35 (conceding that the FAQs are judicially noticeable).

[3] Moreover, the FAQ expressly provides guidance to "operators," a term that naturally includes small and large companies alike; it describes FTC enforcement actions against large corporations such as Sony and Yelp; and it provides guidance to typically large entities like "ad networks." *Id.* (emphasis added). This is true even if the FTC was *motivated* to issue the guidance by the Small Business Regulatory Enforcement Fairness Act, which promotes "simplify[ing] the language of Federal regulations affecting small businesses" and "develop[ing] more accessible sources of information on regulatory and reporting requirements for small businesses." Pub. L. No. 104–121, § 203. Finally, courts have properly relied on the FAQs when considering claims against large companies, including Google. *See Balderas*, 489 F. Supp. 3d at 1261; *M. K. v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 4937287, at *3 (N.D. Cal. Aug. 1, 2023).

"reasonable" and "unreasonable"); *Smith v. NVR, Inc.*, No. 17 C 8328, 2018 WL 6335051, at *6 (N.D. Ill. Dec. 5, 2018) ("[W]hat is . . . 'reasonable' in one context may not be in another.").

Unable to escape the FTC's clear and consistent guidance on school consent, Plaintiffs incorrectly assert that "the FTC recently stated that schools may not consent in lieu of parents," Opp. 11-12, citing an amicus brief filed by the FTC in *Shanahan v. IXL Learning, Inc.*, No. 24-6985 (9th Cir.). *See* ECF No. 35-3 (hereinafter "FTC Brief"). That is not remotely what the FTC said. Rather, the FTC's brief was limited to "correcting any misimpression" that COPPA and its implementing regulations "can lead to parents being bound by the terms of arbitration agreements between schools and providers of educational technology services." FTC Brief at 7. The FTC Brief merely stands for the unremarkable proposition that COPPA does not create an agency relationship binding parents to arbitration provisions agreed to by schools. It does not disturb the FTC's longstanding and consistent instruction that operators may rely on school consent when collecting information solely for educational purposes.

Taken together, the text of COPPA and its implementing rule, the FTC's longstanding written guidance and enforcement posture, and the only case law directly on point confirm that—in the educational context—operators such as Google may rely on consent from schools to satisfy COPPA's consent requirement. By purporting to require something different, Plaintiffs' state law claims run antithetical to, and thus are preempted by, COPPA.[4]

### C. Plaintiffs' claims each fail for independent reasons.

#### 1. Counts I & II fail for lack of a constitutional violation by Google.

##### a. Google is not a state actor.

Plaintiffs do not show state action under the "public function" or "entwinement" test.

---

[4] Plaintiffs include a footnote asserting that dismissal based on COPPA would be inappropriate due to "fact issues" such as whether Google "used data only as specified." Opp. at 11-12 n. 10. But once again, Plaintiffs do not allege any specific facts suggesting that Google used data other than as disclosed—much less meet the heightened pleading standard that would apply if Plaintiffs were to pursue their claims based on a misrepresentation theory. *See* Mot. at 9-11; *see also* Opp. at 14 n.12 (clarifying that only UCL claim sounds in fraud). Plaintiffs cannot use discovery to *create* a claim; they must first plausibly state a claim in order to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**Public Function:** Plaintiffs admit that the "public-function test is satisfied on a showing that the function at issue is both traditionally and exclusively governmental." Opp. at 16. Yet they ignore half of the test, making no effort to argue that Google performs a function that is *exclusively* governmental. *See* Mot. at 11-12; *Tovar v. City of San Jose*, No. 5:21-CV-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (failing to respond amounts to concession). The exclusivity requirement is dispositive here—as two courts recently held when dismissing similar Section 1983 claims against ed tech providers. *See Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *8 (N.D. Ill. Aug. 20, 2025) ("[T]he Supreme Court has explained that providing education to high school students generally does not qualify as an 'exclusive' public function, and it follows that the element of that function at issue here— handling their data—is likewise not an exclusive public function."); *Hernandez-Silva*, 2025 WL 2233210, at *4 ("[E]ducational services [are] not a function that is traditionally and exclusively the prerogative of the state."). It does not matter that these courts relied on precedent involving employment matters (*see* Opp. at 17), because those decisions expressly found that the functions of providing "education of maladjusted high school students" and "educational services" were not exclusively governmental. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 814-15 (9th Cir. 2010). The single out-of-circuit case that Plaintiffs cite does not help them, as it does not discuss the exclusivity requirement and involves claims against a school operator as opposed to a technology provider. *See Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 209 (E.D.N.Y. 2018).

**Joint Action Test**: The "intentionally demanding" joint action and entwinement tests "require[] a high degree of cooperation between private parties and state officials" on the alleged misconduct. *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023) (internal citation omitted). But Plaintiffs allege the opposite: that the schools "do not control the generation, collection, storage, use, or disclosure of student data by Google or any third party to which Google grants access to student data." Compl. ¶ 155. This "tension" is exactly what led the *Hernandez-Silva* to correctly find the joint action test unmet. 2025 WL 2233210, at *4; *see also Q.J.*, 2025 WL 2410472, at *8 (similar). The one case Plaintiffs cite, *Brannum v. Overton Cnty.*

*Sch. Bd.*, No. 2:03-0065, 2006 WL 8445313 (M.D. Tenn. June 20, 2006),[5] is easily distinguished

because "[t]he evidence in that case showed that the decision about where the cameras were

placed [in school locker rooms] was made jointly by the school officials and contractor."

*Hernandez-Silva*, 2025 WL 2233210, at *4. The Complaint here includes no similar allegations

(or *any* details about interactions between Google and Plaintiffs' schools).

      **FERPA / COPPA:** Plaintiffs double down on their efforts to avoid the relevant tests

entirely, arguing that Google's potential status as a "school official" under FERPA, and its

reliance on school authorization under COPPA, is enough. But as stated in *Hernandez-Silva*:

> *Caviness* was clear that statutory labels are not necessarily dispositive with
> respect to all of a private entity's conduct. Therefore, the fact that Defendant
> is authorized to collect student data as a "school official" under [FERPA]
> and purports to comply with [COPPA] does not convert it into a state actor.

2025 WL 2233210, at *4 (cleaned up). The Court should dismiss Counts I & II with prejudice

because Plaintiffs' own allegations establish that Google is not a state actor.

      **b.**      **Plaintiffs have not shown a Constitutional violation.**

      Plaintiffs have also not plausibly alleged a Fourth or Fourteenth Amendment violation.

      Google is not required to "demonstrate . . . that children or their parents understand how

Google's products work." Opp. at 19. Rather, the burden is on Plaintiffs to *at least* allege facts to

establish that they had an expectation of privacy "that society is prepared to recognize as

reasonable." *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007). It is

unreasonable to think that Plaintiffs can use Google's web-based products without any

information ever being sent to Google servers—especially given its public terms and policies.

      Moreover, the schools have apparent authority over Plaintiffs, so there can be no Fourth

Amendment claim against Google after receiving consent through the schools. *See Pryor v. City*

*of Clearlake*, 877 F. Supp. 2d 929, 944 (N.D. Cal. 2012). Plaintiffs' criticism that Google relies

---

[5] Plaintiffs wrongly assert that there is no circuit precedent for "whether a private company can be
a state actor when providing public-school services." Opp. at 17. But district courts in the Ninth
Circuit issued both *Hernandez-Silva* and *San Mateo Union High Sch. Dist. v. Educ. Testing
Servs.*, No. C 13-3660 SBA, 2013 WL 4711611 (N.D. Cal. Aug. 30, 2013) (holding that
companies that provided student testing services did not satisfy public function test).

on "criminal-law doctrine" (Opp. at 13) ignores the obvious fact that Fourth Amendment claims by definition require a government search, which most often occur in the criminal context. And the "civil" cases Plaintiffs offer instead have nothing to do with Fourth Amendment jurisprudence, dealing instead with the enforceability of arbitration agreements, which is not at issue here. *See Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074 (2022); *Shanahan*, 2024 WL 4658276, at *4. Finally, Plaintiffs do not explain how *Cherkin* or *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *6 (N.D. Cal. July 18, 2025) help them (Opp. at 19), as those cases did not involve Fourth Amendment or Section 1983 claims.

**Fourteenth Amendment**: The Fourteenth Amendment protects only "highly sensitive personal information." *Doe v. Bonta*, 101 F.4th 633, 638 (9th Cir. 2024) (cleaned up). Plaintiffs do not plausibly allege that any "highly sensitive" information is at issue because they provide no facts about their personal use of Google's products. Even if *Cherkin* involved Constitutional claims (it did not), that complaint is distinguishable as explained above because it specifically identified the services used and the information collected from the plaintiffs, *see supra* p. 2.

### 2. Counts III & IV fail due to unsatisfied FWA and CIPA elements.

The Complaint does not include the factual detail required to plead specific elements of the FWA and CIPA, demanding dismissal of Counts III & IV.

**"In transit" requirement.** The "in transit" requirement renders the FWA and CIPA "undoubtedly limited" in the context of online communications, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (citations omitted). Courts routinely dismiss claims where—as here—there are no factual allegations to support the assertion that communications were captured in real time. *See* Mot. at 15; *see also Hernandez-Silva*, 2025 WL 2233210, at *5 ("[A] single vague and conclusory allegation that [Google] shares student data in real time and/or near-real time' is not sufficient to demonstrate any eavesdropping by third parties[.]"). Here, as in other cases where FWA and CIPA claims have been dismissed, Plaintiffs "merely 'restate the pleading requirement of real time interception' without providing any 'specific facts as to how or when the interception takes place.'" *LiveRamp*, 2025 WL 2021802, at *10 (contrasting plausible allegations specifically describing "event listener" technology)

(internal citation omitted). Plaintiffs' Opposition does not meaningfully respond to these defects, nor cite to any facts to support their in-transit allegations.

**Communications contents.** The FWA and CIPA apply only to the "contents" of "communications." Mot. at 14-15. Plaintiffs have not plausibly alleged that this element is satisfied because they do not, for example, identify which applications they used or what information they provided. *See*, *e.g. Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1038 (S.D. Cal. 2024) (dismissing where plaintiff allegedly "engaged with the chat feature" but did not allege facts suggesting that such engagement involved "more than record information") (cleaned up).

Plaintiffs' Opposition appears to ground Counts III & IV in "browser-fingerprinting." Opp. at 20. Yet the (limited) allegations in the Complaint make clear that "browser fingerprinting" does not collect the contents of any communications; rather, it relies on "browser attributes," "operating-system attributes," "hardware attributes," and other non-content data. Compl. ¶ 59; *compare, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833-34 (N.D. Cal. 2021) ("browser type" and "operating system" information was non-content), *with In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("intended message conveyed by [a] communication[]" was content). Moreover, although URLs may sometimes qualify as "content," *see* Opp. at 20, Plaintiffs do not provide *any* facts suggesting, for example, that they entered any "search queries" appearing in URLs. Nor do Plaintiffs describe any "coursework" or "submissions." *Compare* Opp. at 20, *with Cherkin* Complaint, ¶¶ 379–80. Nor can "pleading deficiencies . . . be cured by submitting additional information in Plaintiff's opposition to this motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989). Communications contents are thus not plausibly alleged.

**"Confidential" communications.** Plaintiffs also do not respond to case law holding that email and other internet-based services do not qualify as protected "confidential" communications under CIPA Section 632 because they are "by their very nature recorded." Mot. at 17. Plaintiffs thus concede the issue. *See Tovar*, 2021 WL 6126931, at *2.

**Third-party involvement.** To state a claim under CIPA Section 631(a), Plaintiffs must *also* plausibly allege that Google aided or conspired with a third party. Mot. at 16. Plaintiffs

vaguely claim that Google provides third parties with "access" for "data sharing." But Plaintiffs cannot plausibly allege third-party involvement without more detail—such as by alleging that they used or their schools enabled add-ons. Again, this is the sort of detail included in *Cherkin* but omitted here. *See, e.g.*, *Cherkin* Complaint, ¶¶ 201–09.

**Party consent.** An interception is not unlawful under the FWA where one of the parties to the communication consents to interception. *See* 18 U.S.C. § 2511(2)(d). Plaintiffs do not dispute that Google only collects information on third-party websites where the operator authorizes collection. *See* Mot. at 9. Instead, Plaintiffs suggest that consent *generally* is not resolvable at the pleadings stage. Opp. at 14. But courts regularly dismiss complaints establishing one-party consent, as the Complaint and its incorporated materials do here. *See, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (dismissing FWA claim where complaint "seem[ed] to establish" consent because "health care providers choose to install Google source code on their web properties"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (similar); ECF No. 31-2 (hereinafter "First Bali Decl."), Ex. 5 (quoted at Compl. ¶ 193).

Second, Plaintiffs invoke the FWA's crime-tort exception. Opp. at 14. But for that exception to apply, the "criminal or tortious purpose must be separate and independent from the act of the recording." *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Plaintiffs here do not identify some "further impropriety" beyond the act of recording itself, such as to use the recording for "blackmail" or similar, separate "criminal conduct." *Id.* at 1135-36. Google's alleged purpose is to provide GWFE and related products to schools and their students. Thus, "Google's purpose in offering these products [is] plainly not . . . to perpetuate torts on millions of Internet users." *See Doe I*, 741 F. Supp. 3d at 843 n.4. The defendant in *LiveRamp*, unlike Google, provided products for the sole purpose of targeted advertising. *Cf.* 2025 WL 2021802, at *1, *9–*10; *see also Goulart v. Cape Cod Healthcare, Inc.*, No. 25-10445-RGS, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025) (collecting cases and rejecting application of crime-tort exception based on targeted advertising allegations). Finally, *Q.J.* did not consider the separate-and-independent requirement at all. *See* 2025 WL 2410472, at *6.

### 3. Count V does not sufficiently plead various CDAFA elements.

The Comprehensive Computer Data Access Fraud Act (CDAFA)'s criminal prohibitions against accessing data "without permission" protect against "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). Given that purpose and the rule of lenity, courts have interpreted "without permission" narrowly, as requiring that a defendant have overcome technical barriers. *See, e.g.*, Mot. at 17. A defendant does not act "without permission" by accessing data transmitted through its own products. *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011).

*Cherkin* does not help Plaintiffs because, in expansively interpreting the CDAFA, *Cherkin* relied on *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), a case that did not consider the meaning of "without permission" at all. Regardless, *Cherkin* is distinguishable because Google acted *with* permission in this case—i.e., with authorization from Plaintiffs' schools. That defense was not presented in connection with the CDAFA claim in *Cherkin*, and it would trample the rule of lenity to find a violation of the CDAFA where Google followed FTC guidance that has been repeated time and again for decades. *See supra* p. 4.

Plaintiffs' CDAFA claim must also be dismissed because they do not allege cognizable "damage or loss," which was the basis for dismissal of this claim in *Hernandez-Silva.* 2025 WL 2233210, at *6. The Opposition is unpersuasive in seeking a different outcome here, including because it does not dispute that *Hernandez-Silva* follows the majority rule, but merely identifies cases in the minority, and because the Complaint does not support the inference that Plaintiffs intended to participate in an (unsupported, hypothetical) market for their data. Opp. at 22.

### 4. Count VI fails for lack of UCL standing and on the merits.

First, as in *Cherkin*, Plaintiffs' alleged privacy harms are insufficient to show statutory UCL standing. Opp. at 22; *see also Hernandez-Silva*, 2025 WL 2233210, at *5 (same). And, as in *Cherkin*, "[i]t is reasonable to infer that plaintiffs would choose *not* to transact in [a hypothetical] market [for their data]." 2025 WL 844378, at *5.

Second, although Plaintiffs may plead alternative remedies, Opp. at 23, they nevertheless must at least include "a simple allegation that legal remedies are inadequate." *Turner v. Porsche*

*Cars N. Am., Inc.*, No. CV 23-06465-MWF, 2023 WL 8788754, at *6 (C.D. Cal. Dec. 19, 2023). Plaintiffs' suggestion that the adequacy of remedies is a "fact-intensive" inquiry misses the point, because whether they actually lack an adequate remedy is immaterial; they must "at a minimum, *plead* that [they] lack[ ] adequate remedies at law." *Johnson v. Trumpet Behavioral Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (emphasis in original).

Third, Plaintiffs do not contest that their UCL "unfair" and "unlawful" claims rise and fall with their derivative claims. *Tovar*, 2021 WL 6126931, at *2. Nor do they dispute that their "Complaint simply parrots the language of [the unfair] tests," Mot. at 19, or identify any *factual* allegations relevant to the balancing or tethering tests. Plaintiffs' UCL "fraud" claim fails because they fail to describe the "who, what, when, where, and how" of Google's alleged fraud or their reliance on Google's alleged misleading statements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs' Opposition points to allegations that Google "falsely claims that it is a 'school official' under FERPA and that it uses student data in compliance with FERPA," and "falsely advises schools that they are authorized to consent on behalf of children under COPPA." Opp. at 15 (citing Compl. ¶ 221). But these are only conclusions of law. *See, e.g.*, *Porras v. StubHub, Inc.*, No. C 12-1225 MMC, 2013 WL 144045, at *5 (N.D. Cal. Jan. 11, 2013) (dismissing UCL claim because allegations of "affirmatively misrepresentations . . . likely to deceive a reasonable consumer" were "no more than legal conclusions").

Finally, as to reliance, Plaintiffs concede that they did not rely on Google's statements, which justifies dismissal as it did in *Cherkin*. *See* 2025 WL 844378, at *5. And while Plaintiffs contend that it is enough to allege that the *public* relied on Google's statements, the cases they cite predate relevant amendments to the UCL in 2004. *See* Opp. at 15. Indeed, although the UCL previously allowed actions for relief "by any person acting for the interests of itself, its members *or* the general public," the amendments tighten the standing requirement and "impose[] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 305, 326 (2009).

Plaintiffs' UCL claim should be dismissed.

**5. Counts VII & VIII lack the factual basis for common law claims.**

Plaintiffs do not identify any "private facts" over which they have an objectively reasonable expectation of privacy or "highly offensive" conduct by Google as required to support Counts VII and VIII, nor do they plausibly allege "public disclosure" as required for Count VII.

*Hernandez-Silva* is directly on point because, there, too, the complaint did "not identify which products [p]laintiffs use . . . what type of data was collected from them, or to whom [d]efendant provided the data." 2025 WL 2233210, at *8. There, as here, such omissions make it impossible to satisfy the "private facts" or "highly offensive" elements. *Id*. at *7. Moreover, Plaintiffs have no reasonable expectation of privacy because Google discloses its information collection practices in the *same* materials that Plaintiffs cite as the basis for their allegations about information collection. *See, e.g.*, First Bali Decl., Exs. 1 & 2; *In re Google, Inc. Priv. Pol'y Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) ("[T]he court does not find any expectation [of privacy] to be plausible in light of Google's earlier disclosure").

As to disclosure, simply alleging that API features *exist* is not the same as alleging that *Plaintiffs'* information was shared through such features. *See, e.g.*, *Doe I*, 741 F. Supp. 3d at 840 (dismissing privacy claims where plaintiffs "assum[ed] that particular features of Google's products [were] enabled . . . based simply on the fact that those features happen to be described in Google's generic product descriptions."). And even if Plaintiffs had plausibly alleged disclosure, the "highly offensive" element is still absent because *schools* must enable third-party apps. *See* First Bali Decl., Ex. 5. "Plaintiffs have not plausibly alleged that any data collected from them was shared with any particular third party in a way that is 'offensive' or violates the Plaintiffs' reasonable expectations of privacy." *Hernandez-Silva,* 2025 WL 2233210, at *8.

The cases cited in Plaintiffs' Opposition are easily distinguishable. For example, *In re Google RTB Consumer Privacy Litigation* alleged targeted advertising through ordinary Google products, not K-12 products like the ones at issue here, where Plaintiffs offer no facts to support a theory of targeted advertising in K-12 products, and no basis to doubt Google's public statements that "no ads [are] shown" and none of the collected information "is used for advertising purposes." First Bali Decl., Ex. 1. *Cherkin* and *GoodRX* are likewise distinguishable because the

complaints in those cases included details, absent here, about the information actually collected from the plaintiffs. *See supra* p. 2; *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *3 (N.D. Cal. July 22, 2025) (plaintiffs allegedly provided medical information for "treatment and a prescription for a urinary tract infection").

### 6. Count IX fails because Plaintiffs have no valid quasi-contract claim.

As in *Hernandez-Silva*, Plaintiffs offer no explanation as to *how* "their unjust enrichment claim presents a viable quasi-contract theory of recovery." 2025 WL 2233210, at *8. Namely, although they emphasize that Google has profited from the challenged products, they fail to plead that such profits were at their expense. For instance, Plaintiffs do not allege that they (or even their schools) paid Google. *See* Mot. at 22 (collecting cases).

Plaintiffs' cited cases are unpersuasive. Neither *GoodRx* nor *In re Meta Pixel Tax Filing*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024), discuss the "expense" element at all. Plaintiffs' cases are also factually distinguishable because they involve targeted advertising not at issue here, or, as to *Cherkin*, because the defendant allegedly created and sold dossiers "for a fee," *Cherkin* Complaint, ¶¶ 87, 201–09, 376–81.

Separately, Plaintiffs again misunderstand the issue regarding inadequate remedies. The possibility that Plaintiffs' other claims might fail (Opp. at 25) does not relieve them of their obligation to at minimum *plead* an adequate remedy at law. *See supra* p. 13. Moreover, the fact that Plaintiffs also seek monetary relief through other claims puts the burden on them to explain *why* they think they can recover more under a restitution theory. *See, e.g.*, *Vance v. Google LLC*, No. 20-CV-04696-BLF, 2024 WL 5011611, at *7 (N.D. Cal. Dec. 5, 2024).

Finally, Plaintiffs do not dispute that their unjust enrichment claim must be dismissed if they have not pleaded actionable wrongdoing, which they have not done.

### III. CONCLUSION

For all of these reasons, and for those discussed in Google's Motion, Google respectfully requests that the Complaint be dismissed.

Dated: September 29, 2025

**PERKINS COIE LLP**


By: */s/ Sunita Bali*
    Sunita Bali (Bar No. 274108)
    Lauren J. Tsuji (Bar No. 300155)
    Anna Mouw Thompson (*Pro Hac Vice*)


*Attorneys for Defendant GOOGLE LLC*