**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*Pro Hac Vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (Bar No. 241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173
E-mail: RPeterson@4-Justice.com

**EDTECH LAW CENTER PLLC**
Julie U. Liddell (*Pro Hac Vice*)
W. Andrew Liddell (*Pro Hac Vice* Forthcoming)
P.O. Box 300488
Austin, TX 78705
Tel.: (737) 351-5855
E-mail: julie.liddell@edtech.law
andrew.liddell@edtech.law

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Block*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOEL SCHWARZ, on behalf of his minor child B.S., EMILY DUNBAR, on behalf of her minor child H.D., and MICHAEL GRIDLEY and ELIZABETH GRIDLEY, on behalf of their minor children A.G. and Z.G., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case. No. 3:25-cv-03125-RS

[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Judge: Hon. Richard Seeborg

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, subject to the parties' Protective Order, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3. PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**4. COST-SHIFTING**

As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

**5. LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve

disputes without court intervention.

**6. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) Only ESI created or received between January 1, 2020, and the present will be preserved;

(b) The parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." To the extent reasonably possible, custodians shall be identified by name, title, and general subject matter of the information. The parties shall discuss the addition or removal of custodians as reasonably necessary;

(c) The parties will agree on the number of custodians per party for whom ESI will be preserved, and/or searched, reviewed, and produced;

(d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

1. backup systems and/or tapes used for disaster recovery; and
2. systems no longer in use that cannot be accessed.

(e) Among the sources of data the parties agree are not reasonably accessible or not proportional to the needs of the case the parties agree not to preserve the following:

1. voice messages;
2. data stored on hard drives, mobile devices, personal digital assistants, and tablets;
3. automatically saved versions of documents and emails;
4. video and audio recordings;

5. deleted, slack, fragmented, or other data accessible only by forensics;
6. systems, server and network logs;
7. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
8. on-line access data such as temporary internet files, history, cache, cookies, and the like;
9. dynamic fields of databases or log files that are not retained in the usual course of business; and
10. data in metadata fields that are frequently updated automatically, such as last opened dates.

**7. SEARCH**

(a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(b) The parties agree to further filter out ESI that is not subject to discovery. Each party will use its best efforts to filter out system files, unprocessable files, non-human generated files, application executable files, Bin files, PSTs, archive files, and P7S files through a commercially recognized hash identification process or other filtering methods. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Video media files and digital audio files may be filtered out except to the extent that they are identified as relevant and proportional to the needs of the case, including on the grounds that they were created by the named plaintiffs.

(c) A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most inclusive responsive email in a thread will be produced. The parties agree that removal of available lesser-included emails from potential production will reduce all parties' costs of document review, production, and

litigation-support hosting, and when producing the most inclusive email in a thread, the parties need not also produce lesser-included emails in the thread, unless a lesser-included email includes a unique responsive attachment. An attachment is a file associated with an email for retention and storage as a single message unit. Metadata that identifies all custodians in possession of each document removed as a duplicate must be produced, to the extent it exists at the time of collection, in an "All Custodian" field in the production load file.

(d) Nothing in this Protocol shall be construed or interpreted as precluding a producing party from identifying, collecting, searching or performing review and analysis, including the use of TAR, to determine if a document is in fact responsive to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not responsive to the requesting party's request, or is privileged or otherwise protected, may be withheld. To the extent a party intends to apply TAR to exclude potentially responsive documents from human review, that party shall meet and confer in advance regarding the use of such technology.

(e) Hyperlinks are not attachments and the extent to which linked content is collected, reviewed and produced will depend primarily on whether it independently meets the collection and search criteria for this action, the linked content is within the possession, custody, or control of the producing party, is responsive and not privileged, and is not otherwise subject to any other limitations in this Order. To the extent linked documents are produced, they will be produced in the form they exist at the time of collection.

(f) If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

**4. 8. PRODUCTION FORMATS**

The parties agree to produce documents in the format set forth in Appendix A.

**5. 9. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree

to phase the production of ESI, including the possibility of rolling productions. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**6. 10. DOCUMENTS PROTECTED FROM DISCOVERY**

(a) Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(b) Nothing in this Agreement shall be interpreted to require disclosure of non-responsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

(c) Nothing in this Agreement shall be construed or interpreted as precluding a producing party from performing review and analysis, including the use of Technology Assisted Review ("TAR"), to determine if a document is in fact relevant to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not relevant to the requesting party's request, or is privileged or otherwise protected, may be withheld.

**7. 11. PRIVILEGE LOG**

(a) If a party reasonably determines that one or more responsive documents are not discoverable because they are protected by the attorney-client privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall use reasonable efforts to produce a log entry for each document or each category of documents withheld for Privilege. A party may produce a metadata log for some or all of the documents being withheld and the party receiving the log may request additional information for a reasonable number of documents if it cannot in good faith assess the basis for the Privilege claim. Notwithstanding the foregoing, a party is not required to log the following: (1) redacted documents; (2) communications with counsel after the date the complaint in this action was filed; or (3) documents that post-date the complaint and constitute

work product prepared in connection with this action.

(b) For email communications, only the last-in-time email in the chain will be set forth on the log.

(c) Once a case schedule is set, the parties will meet and confer regarding the appropriate timing for production of a privilege log following the substantial completion of each party's document production. The scheduling of such timing will allow sufficient time for the parties to challenge or bring motions related to claims of privilege and/or request additional discovery.

**8. 12. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO STIPULATED**, THROUGH COUNSEL OF RECORD.

Dated: January 13, 2026

**GEORGE FELDMAN MCDONALD, PLLC**

By: */s/ Rebecca A. Peterson*

Rebecca A. Peterson (Bar No. 241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173
E-mail: RPeterson@4-Justice.com

David George*
Brittany Sackrin*
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33467
Tel.: (561) 232-6002
Fax: (888) 421-4173
E-mail: DGeorge@4-Justice.com
BSackrin@4-Justice.com

Lori G. Feldman*
Michal Liskow (243899)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel.: (917) 983-9321
Fax: (888) 421-4173
E-mail: LFeldman@4-Justice.com
MLiskow@4-Justice.com

**GUSTAFSON GLUEK, PLLC**
Daniel E. Gustafson*
Catherine Sung-Yun Smith (*Pro Hac Vice*)
Shashi K. Gowda (*Pro Hac Vice*)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844
Fax: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
sgowda@gustafsongluek.com

**EDTECH LAW CENTER PLLC**
Julie U. Liddell (*Pro Hac Vice*)
W. Andrew Liddell*
P.O. Box 300488
Austin, TX 78705

Tel.: (737) 351-5855
E-mail: julie.liddell@edtech.law
andrew.liddell@edtech.law

*Counsel for Plaintiffs and the Proposed Class*

**Pro Hac Vice* Forthcoming

**PERKINS COIE LLP**

By: /s/ Sunita Bali
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*Pro Hac Vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: ________________________ ____________________________________________

Honorable Richard Seeborg
United States District Judge

**APPENDIX A**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted at the time of collection and processing without undue burden or cost shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document at the time of collection and processing without undue burden or cost, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
    - Delimiter = ¶ (ASCII:020)
    - Text-Qualifier = þ (ASCII:254)
    - New Line = ® (ASCII:174)
    - Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number |
| ENDBATES | Ending Bates number |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | All custodians, de-duped and primary, that are associated with a file |
| SUBJECT | Subject line of email |
| TITLE | For emails, the subject line<br><br>For non-emails, the File Name |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the “To” line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the “CC” line of the email |

| | |
|---|---|
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Original composer of document or sender of email message. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Link to native file (native files only) |
| TEXTLINK | Link to text files |
| MD5 HASH | 128 bit 32-digit hexadecimal number used to identify duplicates during file processing |
| FILE TYPE | The type of file the document is |
| FILE EXTENSION | The file extension of the document |
| RECEIVED DATE | The date an e-mail was received |

9. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

a) **Attachments**. The parties will not produce non-responsive attachments that are attached to responsive emails. However, if any attachment to an email contains responsive content, then the cover email shall be produced if not privileged, regardless of the cover email's responsiveness.

b) **Comments and tracked changes**. If a document contains comments, notes, hidden content, or tracked changes, the TIFF images shall be generated to include the comments or tracked changes contained in the file.

10. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When

possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TEXTLINK field.

11. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Native Files.** Spreadsheets (e.g., MS Excel, Google Sheets), audio files (e.g., .mp3, .wav, .ram, .ra, .mid), video files (e.g., .3g2, .3gp, .asf, .asx, .avi, .flv, .mov, .mp4, .mpg, .rm, .swf, .vob, .wmv) and delimited text files (e.g. comma-separated value (.csv) files, and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced for such files unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. Unless native redactions are contemplated by the parties, if a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. [OPTIONAL for instances where other types of documents (like emails) are produced in native] Prior to a party's use of a natively produced document in a deposition, in a submission to the Court, or at a hearing or trial, the parties shall meet and confer regarding the identification of and any conversion of the native file into an alternative format for use and labelling for tracking as exhibits.]

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Color Documents.** Documents created in or containing color (e.g., photographs, product labels, marketing materials), shall be produced in color as single-page 300 DPI JPG images. To the extent production of a document in black and white that was originally in color alters or obscures the substance of the document, then, upon reasonable request, the document will be produced in

color as a single-page 300 DPI JPG image(s). The receiving party may request the producing party produce other particular documents or categories of documents in color and such requests will not be unreasonably denied.

13. **Embedded Files.** Except as provided below, embedded files are to be fully extracted, and the appropriate parent-child relationship must be maintained unless such original document is produced in native format with the embedded information contained within it. Examples of embedded files include but are not limited to the following:

a) ZIP files and other compressed file formats;

b) Embedded PDF file formats; and

c) Embedded e-mails that exist as an attachment to an e-mail.

The producing party need not produce embedded files as separate files that do not have user created content, including but not limited to irrelevant inline image files (*e.g.*, logos, icons, and footers). The producing party need not produce embedded Excel files as separate files that have only duplicative data and not hitting search terms of what is available in the parent document from which they were extracted. The requesting party can meet and confer with the producing party to request the underlying Excel files

14. **E-mail Families.** All parent/child document relationships must be maintained unless otherwise agreed upon. These fields should be identified in the BEGATTACH or Group Identifier field contained in the .dat file. To the extent a document is part of a "document family" with a combination of responsive, privileged, and/or non-responsive documents: (i) the privileged documents will be represented in the production with a placeholder TIFF image that bears the legend "Document Withheld as Privileged" and (ii) the non-responsive documents will be represented in the production with a placeholder TIFF image that bears the legend "Non-Responsive Document." The TIFF image(s) shall be endorsed with a sequential Bates number.

15. **Production Media.** Documents shall be encrypted and produced on external hard drives, readily accessible computer(s) or other electronic media, or via FTP or other equivalent file transmittal application ("Production Media"). Encryption keys or passwords shall be sent under separate cover, contemporaneously with transmitting the encrypted Production Media. Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and [to the extent required by local law or regulation] (4) the set(s) of requests for production for which the documents are being produced.